UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND CARPENTERS ANNUITY FUND, RHODE ISLAND CARPENTERS PENSION FUND, RHODE ISLAND CARPENTERS VACATION FUND, RHODE ISLAND CARPENTERS HEALTH FUND and DONALD LAVIN, in his official capacity as Co-Administrator of the Funds,
Plaintiffs,

v.

C.A. No. 04-163S

TREVI ICOS CORPORATION,
Defendant.

## STATEMENT OF UNDISPUTED FACTS

1. The plaintiffs are four employee benefit funds administered for the benefit of members of a labor union, Rhode Island Carpenters Local 94 ("Union"), and the administrator of those funds. See Complaint, ¶¶ 2 – 6, 9. Each of the named plaintiff funds exists pursuant to an agreement of trust executed by the Rhode Island Chapter of the Associated General Contractors of America, Inc. and the Union.

2. The four trust agreements establish funds for providing retirement programs (the Rhode Island Carpenters Pension Fund, Exh. A, and the Rhode Island Carpenters Annuity Fund, Exh. B), a health and welfare plan (Rhode Island Carpenters Health Fund, Exh. C ), and a vacation plan (Rhode Island Carpenters Vacation Fund, Exh. D).

3. The defendant Trevi Icos Corporation ("Trevi Icos") is a construction contractor based in Massachusetts that specializes in the operation of heavy excavation equipment for the construction of foundations for large projects.

4. Trevi Icos is party to collective bargaining agreements with labor unions through its membership in the Foundation and Marine Contractors' Association ("FMCA"), a Massachusetts organization. Deposition of Gregory Sanchez, Trevi Icos Area Manager, October 14, 2005 ("Sanchez Dep.," Exh. E), p. 7, ll. 6-12; p. 9, ll. 17 - 22.

5. Pursuant to collective bargaining agreements to which Trevi Icos is a party through its membership in FMCA, when Trevi Icos performs work in Rhode Island that requires the

employment of carpenters, Trevi Icos is subject to two collective bargaining agreements with the Rhode Island Carpenters Local 94: a contract between the Union and the Labor Relations Division of the Associated General Contractors of Rhode Island, Inc. ("AGC CBA") (Exh. E), and a contract between the Union and with the Construction Industries of Rhode Island ("CIRI CBA") (Exh. F). Deposition of David F. Palmisciano, Senior Business Representative of the New England Regional Council of Carpenters February 2, 2006 ("Palmisciano Dep.," Exh. H), pp. 8, ll. 16 – 24; p. 12, l. 4 – p. 14, l. 4.

6. Article X of the AGC CBA and Article XII of the CIRI CBA, contain identical pertinent parts as follows (emphasis supplied)

> The Employer agrees to continue in effect a Stamp Plan, instituted January 1, 1977, providing for the purchase of stamps in varying denominations by Employers, *to be tendered to all carpenters and apprentices with their payroll checks.* The Stamp to cover total cost of all fringe benefits: the Health Fund, Annuity Fund, Apprenticeship Fund, Market Recovery Fund, Industry Advancement Fund, Dues Checkoff and Vacation Fund. ... The Stamp Plan shall be mandatory and all *carpenter employees* shall participate.
>
> * * *
>
> An Employer's sole obligation under the terms of this Agreement shall be to make the deduction from the *employee's* net wages, and to deliver said stamps to said *carpenter employee* for work performed, as provided for in the above paragraphs and upon compliance therewith, he shall have no further obligation to the employee, the Union, the Association, the Trustees or the Bank to see the proper administration of said funds.

Exh. F, p. 14; Exh. G, p. 12.

7. The CIRI CBA and the AGC CBA also are identical in their assignment of meaning to the defined term "carpenter" (although the two agreements employ different descriptions of the nature of the work that comes within the jurisdictional definition of carpentry):

> AGREEMENT as entered into this 4th day fo June by and between [AGC] on behalf of such members as may from time to time authorize the same to be done, and such other Employers who may assent to its provisions by signature thereto and as hereinafter called the Employer and the New England Regional Council of Carpenters and on behalf of Local Union 94 of the United Brotherhood of Carpenters and Joiners of America, *hereinafter called the Union or carpenter.*

Exhibit G, p. 1 (emphasis supplied).

> AGREEMENT as entered into this 4th day of June, 2001 by and between the [CIRI] hereinafter referred to as "Employer" and the NEW ENGLAND REGIONAL COUNCIL OF CARPENTERS and on behalf LOCAL UNION 94 of the United Brotherhood of Carpenters and Joiners of America, *hereinafter referred to as the "Union" or " carpenters".*

Exh. F, p. 1 (emphasis supplied).

8. The term "Employee" is defined as follows in the trust agreements:

- Pension Fund: "An employee in a bargaining unit represented by the union in the employ of an Employer" Exh. A, p.3
- Annuity Fund: "An employee in a bargaining unit represented by a union in the employ of an employer." Exh. B, p.2
- Health Fund: "An employee in a bargaining unit represented by a union in the employ of an employer. The term shall include full-time employees of the Union for whom it makes contributions to the fund." Exh. C, p.3
- Vacation Fund: "The term "Employee," as used herein, shall mean an employee of an Employer as defined in Paragraph 1 hereof. Exh. D, p.2

9. The Pension, Annuity, and Health Fund trust agreements define the term "Union" to be a "local union or district council of the United Brotherhood of Carpenters and Joiners of America." Exh. A, p.2; Exh. B, p. 2; Exh. C, p.2.

10. This litigation relates to a large construction project at the sewage treatment facility for the City of Warwick (the "Project"), for which Trevi Icos was a subcontractor.

11. On March 4, 2003, Trevi Icos conducted a pre-job meeting at the job site with representatives of the different unions involved (carpenters, laborers, and operators), to discuss its part of the Project, identify and describe the work it would be doing, and the building trades whose members would be needed to conduct the work. . Sanchez Dep. p. 14, ll. 14 -16; p. 27, ll. 8 -10.

12. At the meeting, a representative of the Union asserted that one or more of its members should be employed in connection with the operation of the CM 120. Trevi Icos disagreed with the Union representative. Sanchez Dep. p. 28, l. 24 – p. 29, l. 16; p. 16, ll. 10 – 12; p. 26, ll. 3 – 8.

13. Trevi Icos did employ carpenters on other parts of its work on the Project. Sanchez Dep. p. 16, ll. 10 – 12; p. 26, ll. 3 – 8.

14. The Union reiterated its assertion of entitlement to additional jobs with Trevi Icos in a letter, threatening to file a grievance if Trevi Icos did not change the manning on the job

to increase the carpenters' positions. Trevi Icos did not respond to the letter, and did not change the manning on the job. Sanchez Dep. p. 23, l 22 – p. 24, l. 9; Exh. L.

15. The AGC CBA and the CIRI CBA contain identical provisions for the resolution of disputes between the Union and an employer regarding work assignments:

> Work assignments shall be made by the Employer in accordance with present decisions and agreements of record and area practice.
>
> In the event a jurisdictional dispute arises then, the disputing unions shall request the other union or unions involved to send representatives to meet with representatives of the Union and Employer to settle the dispute. If unanimous agreement is not reached at the meeting, the Union shall request that its international union assign a representative who shall make arrangements to meet representatives of the other international union or unions involved and representatives of the Employer to seek settlement of the dispute. The Employer shall also request the international unions involved to assign representatives to seek settlement of the dispute.
>
> If the above procedures, or any other mutually agreed upon procedure fails to resolve the problem, then the Employer, at the request of the Union, agrees to participate in tripartite arbitration with all disputing parties. The impartial umpire to hear the dispute can be mutually agreed upon by the parties, or appointed by the American Arbitration Association.
>
> Decisions rendered by any of the above procedures shall be final, binding and conclusive on the Employer and the Union parties to this agreement.
>
> There shall be no strikes, picketing or lockouts over any jurisdictional dispute.

Exh. F, p. 6, Exh. G, p. 3.

16. After the Union made its demands on Trevi Icos for more positions on Trevi Icos's work, and Trevi Icos disagreed, the Union just let the matter drop. Palmisciano Dep., p. 35, ll. 12 – 16.

16. Trevi Icos completed its work on the Project by the Fall of 2003. Sanchez Dep. 12, ll. 4 - 13.GS 12.

17. The Union never grieved or otherwise followed up on its contention that it should have had more men on Trevi Icos's work. Affidavit of Gregory Sanchez, ¶ 4 (Exh. M)

18. Trevi Icos paid all wages and benefits to or for the benefit of all of the workers whom it employed, and their respective employee benefit funds associated with their labor unions. *Id*, ¶ 3.

19. Specifically, Trevi Icos submitted all required payroll records, and made all required benefits plan contributions (to the plaintiff funds), for the carpenters whom it employed in its work on the Project. *Id.* ¶ 5

20. At a meeting of the trustees of the four plaintiff benefit funds on October 21, 2003, Mr. Holmes of the Union requested that the funds initiate a civil action against Trevi Icos for payment of contributions to the funds in connection with work that the Union thought should have been given to its members. Palmisciano Dep., p. 22, l. 14 – 25.

21. None of the persons identified by the plaintiff funds as their fiduciaries is a party to this litigation.

22. The administrator, Donald Lavin, who is also a plaintiff in this case, is not a fiduciary under the terms of the trust agreements, and was not identified as a fiduciary of any of the trusts in the plaintiffs' answers to interrogatories.

812/13/144