**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

RHODE ISLAND CARPENTERS ANNUITY FUND, RHODE ISLAND CARPENTERS PENSION FUND, RHODE ISLAND CARPENTERS VACATION FUND, RHODE ISLAND CARPTENTERS HEALTH FUND and DONALD LAVIN, in his official capacity as Co-Administrator of the Funds,
*Plaintiffs*,

v. C.A. No. 04-163S

TREVI ICOS CORPORATION,
*Defendant*.

**PLAINTIFFS' OBJECTION TO MOTION FOR SUMMARY JUDGMENT**

Plaintiffs hereby object to Defendant's Motion for Summary Judgment for the reasons set forth in their Memorandum of Law and Statement of Genuine Issues of Material Fact, attached hereto.

Respectfully submitted,
On behalf of Plaintiffs,
By their attorneys,

Marc B. Gursky, Esq. (#2818)
Elizabeth Wiens, Esq.(#6827)
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Suite C
North Kingstown, RI 02852
Tel. (401)294-4700
Fax (401)294-4702

## CERTIFICATION

I hereby certify that a true copy of the within document was sent by regular mail to R. Daniel Prentiss, One Financial Plaza, Suite 1800, Providence, RI 02903 on this __21__ day of April, 2006.

EW

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

RHODE ISLAND CARPENTERS ANNUITY FUND, RHODE ISLAND CARPENTERS PENSION FUND, RHODE ISLAND CARPENTERS VACATION FUND, RHODE ISLAND CARPTENTERS HEALTH FUND and DONALD LAVIN, in his official capacity as Co-Administrator of the Funds,
*Plaintiffs*,

v. C.A. No. 04-163S

TREVI ICOS CORPORATION,
*Defendant*.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendant Trevi Icos Corporation ("Trevi Icos") is bound to two collective bargaining agreements ("CBAs") with the New England Regional Council of Carpenters Local Union 94 ("Local 94"). The CBAs are attached to Defendant's Motion for Summary Judgment as Exhibits F and G.[1] The CBAs require Trevi Icos, when performing covered work, to make fringe benefit contributions to the Rhode Island Carpenters' Annuity Fund, Rhode Island Carpenters' Pension Fund, Rhode Island Carpenters' Health Fund, Rhode Island Carpenters' Apprenticeship Fund, and Rhode Island Carpenters' Vacation Fund, (collectively referred to as "the Funds"). See Exhibit F at Article X and Exhibit G at Article XII. Trevi Icos performed covered work but did not make the required contributions. See Plaintiffs' Statement of Disputed Fact ("SDF") ¶ 19.

[1] All lettered exhibits referred to in this Memorandum are those attached to Defendant's Memorandum of Law. All numbered exhibits are attached hereto.

Accordingly, the Funds and their Co-Administrator filed the instant Complaint seeking to compel delinquent contributions.

Defendant erroneously contends that it is entitled to Summary Judgment because 1) the Court lacks jurisdiction over Plaintiffs' Claims 2) Plaintiffs' lack standing to pursue their claims and 3) Plaintiffs' section 515 claims fail on the merits because Trevi Icos had no obligation to make contributions under the terms of the CBAs. As discussed more fully below, Defendant's Motion for Summary Judgment ("Defendant's Motion") is both factually and legally inadequate. At a minimum, there are a multitude of disputed material facts which preclude granting summary judgment to Defendant.

**ARGUMENT**

Pursuant to the Federal Rules of Civil Procedure 56, federal courts may only grant summary judgment when there is no genuine issue as to any material fact *and* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). All facts are to be examined in the light most favorable to the nonmovant, drawing all reasonable inferences and resolving all factual conflicts in their favor. *See Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 18 (1st Cir. 1999). *See also FHS Props. Ltd. P'ship v. BC Assocs.*, 175 F.3d 81, 85 (1st Cir.1999)(A motion for summary judgment should only be granted if "the evidence, viewed from the perspective most favorable to the non-movant, is so one-sided that the movant is plainly entitled to judgment, for reasonable minds could not differ as to the outcome.") .

Summary Judgment in an ERISA action based on a collective bargaining agreement ("CBA") is only appropriate if the CBA language is "wholly unambiguous." *Trustees of the Bricklayers and Allied Craftworkers, Local 5 v. Charles T. Driscoll Masonry Restoration Co., Inc.*, 165 F. Supp. 2d 502, 510 (S.D.N.Y. 2001) (citations omitted). The determination of

whether or not CBA language is unambiguous is a question of law to be decided by the court. *Id.* CBA language that, viewed objectively, is capable of more than one meaning is ambiguous, thus prohibiting a court from granting summary judgment in an action seeking to enforce the ambiguous language. *Id.*

When the facts are examined in the light most favorable to Plaintiffs, it is clear that this Court has subject matter jurisdiction over this matter, that both the Funds and the Administrator have standing to pursue this action and, under the terms of the CBA, Defendant is required to submit contributions to the Funds for all covered work performed by its employees, irrespective of their union membership status.

## I. THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS

Defendant erroneously contends that this Court lacks jurisdiction over Plaintiffs' claims, arguing that Plaintiffs are not fiduciaries under 29 U.S.C. § 1132(e)(1). On the contrary, as indicated in Part II, infra, both the Plan Administrator and the Funds are fiduciaries within the meaning of 29 U.S.C. § 1132(e)(1).[2] Accordingly, the case is properly before this Court.

## II. PLAINTIFFS HAVE STANDING TO BRING THIS COMPLAINT

Contrary to Defendant's contention, Plaintiffs have standing to bring suit under 29 U.S.C. 1132(e) because they are fiduciaries within the meaning of 29 U.S.C. § 1132(a). Section 502(e)(1) of ERISA grants the district courts jurisdiction to hear civil actions under the Act brought by, *inter alia*, an employee benefit plan's "fiduciary." 29 U.S.C. § 1132(e)(1). Section 3(21)(A)(iii) of ERISA defines a "fiduciary" to include a person who "has any discretionary authority or discretionary responsibility in the administration of [an employee benefit] plan." 29 U.S.C. § 1002(21)(A)(iii); see also id. § 1002(21)(A)(i) ("fiduciary" includes one who "exercises

[2] Or, at the very least, an issue of material fact exists as to whether Donald Lavin and the Funds exercise discretionary functions and are therefore fiduciaries as defined in 29 U.S.C. §1002(21)(A).

any discretionary authority or discretionary control respecting management of [an employee benefit] plan or exercises any authority or control respecting management or disposition of its assets").

It is well-settled that plan administrators, by their very nature, are fiduciaries within the meaning of ERISA. "Certain positions, such as that of a trustee or plan administrator, by their very nature confer fiduciary status." Employee Benefits Law, ABA Section of Labor and Employment Law, BNA at 267. "A plan administrator is a fiduciary because, in the exercise of [his or her] administrative duties,[3] he or she must have 'discretionary authority or discretionary responsibility in the administration' of the plan." ERISA Litigation Handbook, 2d. Edition, 2004 Supplement, § 3.02[B]. See also DOL Interpretative Bulletin 75-8, 29 C.F.R. § 2509.75-8 at D-2. Regulations promulgated by the Department of Labor interpreting ERISA make clear that the administrator and trustees of a pension plan are fiduciaries within the meaning of the statute. *Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 141-142 (2d Cir. 1997).

Section 29 CFR §2509-75-8 at D-3 (emphasis added) provides:

> Some offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in section 3(21)(A) of the Act. For example, *a plan administrator or a trustee of a plan must, by the very nature of his position, have "discretionary authority or discretionary responsibility in the administration" of the plan within the meaning of section 3(21)(A)(iii) of the Act. Persons who hold such positions will therefore be fiduciaries.*

[3] The plan administrator has certain duties and obligations that are imposed by provision of ERISA. These duties and obligations include: preparing financial reports for filing with the DOL, 29 U.S.C. § 1021(b); providing participants with copies of plan documents, plan summaries, and other prescribed information, 29 U.S.C. § 1021(a); providing participants with information regarding their benefits, 29 U.S.C. § 1025; and providing COBRA notices to beneficiaries, 29 U.S.C. 1166(a)(4).

The First Circuit has held that named administrators are fiduciaries under ERISA. *See e.g. Barrs v. Lockheed Martin Corp.*, 287 F.3d 202, 206 (1st Cir. 2002)(Lockheed, as the named administrator of the plan, is a fiduciary under ERISA.). Other Circuits are in agreement. *See Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 141 (2d Cir. 1997) ("The Department of Labors [guidance] interpreting ERISA make[s] clear that the administrator and trustees of a pension plan are fiduciaries within the meaning of the statute . . . ."); *Bouboulis v. Transp. Workers Union of Am.*, 2006 U.S. App. LEXIS 6120 (2d Cir. 2006); *Metro. Life Ins. Co. v. Parker*, 436 F.3d 1109, 1111 (9th Cir. 2006) (The plan administrator is a fiduciary charged with the duty to administer the benefit plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent [with ERISA]." 29 U.S.C. § 1104(a)(1)(D)); *Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413, 424 (4th Cir. 2005) ("It is now evident that Provident, as the benefit plan administrator, is a fiduciary with the right to bring a civil action under § 1132(a)(3)"); *Fischer v. Phila. Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993); *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 379 (4th Cir. 2001) (noting that entity acts as "a fiduciary for purposes of ERISA when it is engaged in the administration or management of its pension plan"); *Hatteberg v. Red Adair Co.*, 79 Fed. Appx. 709 (5th Cir. 2003); *Horn v. Cendant Operations, Inc.*, 69 Fed. Appx. 421, 427 (10th Cir. 2003) (Cendant, through its Employee Benefits Committee, was the plan administrator. Thus, it was a fiduciary.); *David P. Coldesina, D.D.S., P.C., Empl. Profit Sharing Plan & Trust v. Estate of Simper*, 407 F.3d 1126 (10th Cir. 2005).

There is no dispute that Donald Lavin is a plan administrator for the Plaintiff Funds. See Defendant's Statement of Undisputed Facts ("SUF") ¶ 1 and Complaint, ¶¶2-6, 9. Accordingly, he is clearly a fiduciary within the meaning of 29 U.S.C. § 1132(e)(1).

Likewise, because the actual parties to this suit are the trustees,[4] who brought this suit in the name of the Funds, and there is no doubt that the trustees are fiduciaries under ERISA, Defendant's "standing" argument must fail. Indeed, several courts have held that employee benefit plans have standing to sue under ERISA. *See Peoria Union Stock Yards Co. Retirement Plan v Penn Mut. Life Ins. Co.*, 698 F2d 320 (7[th] Cir. 1983) (pension fund has standing to challenge alleged violations of ERISA); *Saramar Aluminum Co. v. Pension Plan for Employees of Aluminium Industry & Allied Industries*, 782 F.2d 577, 581 (6th Cir. 1986)(we consider that the Plan as a party, then, comes under the ERISA definition of a "fiduciary"); *Chaness & Simon, P.C. v. Simon*, 241 F. Supp. 2d 774, 778 (D. Mich. 2003)(rejecting Defendant's argument that since Plaintiff is the ERISA-governed plan itself, Plaintiff is not a proper ERISA-plaintiff because it is not a participant, beneficiary, fiduciary, or the Secretary of Labor); *American Federation of Unions, Local 102 Health & Welfare Fund v. Equitable Life Assurance Society of the United States*, 647 F. Supp. 947, 949 (M.D. La. 1985), *aff'd in part and rev'd in part on other grounds*, 841 F.2d 658 (5th Cir. 1988) (employee welfare benefit plan was a "fiduciary" as defined by ERISA); *Electricians Health, Welfare and Pension Plans, I.B.E.W., Local No. 995 v. Gulino*, 594 F. Supp. 1265 (M.D. La. 1984) (court had jurisdiction pursuant to § 1132(e) over action brought by pension plan because the trustees of the plan were fiduciaries).

Finally, any standing problem can easily be resolved by substituting the trustees, who, as indicated above, are the real parties in interest, see footnote 4, as named plaintiffs.

---

[4] It is the trustees that authorized this suit, have engaged in discovery, and have testified on behalf of the Funds. See Exhibit 1, Plaintiffs' Answers to Defendant's Interrogatories ¶ 4 and Exhibit 2, Affidavit of David Palmisciano ¶ 1.

## III. DEFENDANT HAS AN OBLIGATION TO CONTRIBUTE TO THE FUNDS ON BEHALF OF ALL INDIVIDUALS PERFORMING COVERED WORK

Trevi Icos is bound to two CBAs with Local 94, the AGC Agreement (Exhibit F) and the CIRI Agreement (Exhibit G). See SUF ¶ 5. Defendant erroneously argues that the CBAs only require contributions on behalf of union members. However, the CBAs unambiguously require that fringe benefit contributions be made on behalf of any and all employees performing covered work, *irrespective of union member status.*[5] David Palmisciano's deposition testimony and Affidavit support this interpretation.

### A. The Plain Language of the CBAs Require Contributions for All Employees

"As a matter of law, collective bargaining agreements may require employers to contribute to funds for all employees, not just employees who are members of the Union." *Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Enterprises, Inc.*, 163 F.2d 965, 969-70 (6th Cir. 1998). Courts have established four factors to consider when determining whether a collective bargaining agreement covers non-union members. *See Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.,* 749 F.2d 315, 318 (6th Cir. 1984). The first factor examines how the worker is defined. The second factor is whether the contract contains a "recognition clause" designating the union as the exclusive bargaining agent for all employees. *Id.* The third factor is whether the language of the agreement otherwise distinguishes union employees from non-union employees. *Id.* And finally, the Court must consider whether the contract contains a "union shop clause," which would require any employee not currently a union member to become one within a stated time period. *Id. See also Bds. of Trs. of the Ohio Laborers' Fringe Benefit Programs v. Blaze Constr., Inc.*, 2002 U.S. Dist. LEXIS 26629 (D. Ohio 2002).

---

[5] Or, at the very least, Plaintiffs' interpretation is reasonable and, accordingly, summary judgment is inappropriate. *See Charles Driscoll Masonry*, 165 F. Supp at 510.

**1. "Carpenter" is defined in reference to job classification**

Article X Section 1 of the AGC Agreement provides, "The Employer agrees to continue in effect a Stamp Plan, instituted January 1, 1977, providing for the purchase of stamps in varying denominations by Employer, *to be tendered to all carpenters and apprentices with their payroll checks.*" (Emphasis added). See Exhibit F. Article I defines a "carpenter" as "one who prefabs or constructs form…" It does not limit the definition of "carpenter" to union members. The definition of carpenter by reference to job classification suggests coverage by the collective bargaining agreement of all employees within those classifications, regardless of union membership. *See Kohn Beverage Co.*, 749 F.2d at 318. Thus, Defendant is required to make fringe benefit contributions on behalf of all employees, whether union members or not. *See Board of Trustees of the Ohio Laborers' Fringe Benefit Programs v. Blaze Construction, Inc.*, 2002 U.S. Dist. LEXIS 26629, *11 (the definition of employee by reference to job classification coverage by the collective bargaining agreement, rather than union membership, is evidence that employers must make fringe contributions on behalf of all employees, whether union members or not).

In *Trustees of the Glaziers v. Glass Masters Ltd.*, 2003 U.S. Dist. LEXIS 6526, 30 Employee Benefits Cas. (BNA) 2119, the employer bound itself to CBAs with two different unions. The bargaining unit work of one union's CBA encompassed employees who performed work covered under the Plaintiffs' Trust Agreement (hereinafter referred to as "glazing work"). The Court held that, even though the glazing work was not performed by members of the Glaziers Union, the Employer was still obligated to contribute to the Glaziers' benefit and pension funds. The Trustees' claims are based on contracts and not principles of labor law and cover whole bargaining units, not just members of the particular union. "[I]f the CBA provides

that Glaziers are to perform glazing work, an employer cannot avoid the fund obligations by assigning work to non-union members or members of another union." Id at *4. Thus, as long as the work performed was covered work under the CBA, contributions are due.

Likewise, in *Konyha v. Isco, Inc.*, 1983 U.S. Dist. LEXIS 17277, 4 BNA 1546, like here, the employer had made contributions on behalf of carpenters who were union members, but it contended that the terms of the agreement did not obligate it to make contributions on behalf of non-union carpenters. There were two provisions at issue. Section 1(b) provided, "It is further agreed that during the period of this agreement, the applicable hourly wage rate for commercial and industrial work in Local #71, Fort Smith, shall be as follows: pension .60." Section 1(e) provides,

> The undersigned contractors beginning May 1, 1979, will pay the sum of forty-five cents (45) per hour into the Arkansas State Council of Carpenters Health and Welfare Trust Funds and thirty-five cents (35) into Welfare Trust Funds and thirty-five cents (35) into the National Carpenters Pension Trust Fund *on all members* of the United Brotherhood of Carpenters and Joiners of America working within the jurisdiction of participating Carpenter Local Union. (Contributions on behalf of Fort Smith Local #71 shall be made to these funds in the amount set out in . . . [the section 1(b) schedule]" (emphasis added).

The Employer argued that section 1(e) required it to make contributions only on behalf of union members, and section 1(b) does not specify whether only union members are covered. Therefore, section 1(e) controls and it is not obligated to make contributions on behalf of non-union member employees. In granting partial summary judgment in favor of the trustees, the court held that to the extent that section 1(e) implied that contributions would not have been made on behalf of non-union member employees, it was illegal under the National Labor Relations Act, which prohibits the encouragement or discouragement of union membership by discrimination in terms of conditions of employment. The Court struck that provision from the

agreement. The Court then examined section 1(b) and found that it unambiguously imposes a duty upon defendant to contribute to the pension fund on behalf of all union member and non-union member employees working within the jurisdiction of Local Union 71.

Moreover, Article V of the AGC Agreement, and Article VII of the CIRI Agreement, provide, "[t]he Employer shall have the right to employ any carpenter who is a member in good standing of any local affiliate of the New England Regional Council of Carpenters…" See Exhibits F and G. Obviously, if a "carpenter" was defined as "a member of Local 94," Articles V and VII would be meaningless.

**2. The CBAs contain "recognition clauses"**

The presence in an agreement of a recognition clause indicates that fringe benefit contributions are required for both union and non-union members. *Bds. of Trs. of the Ohio Laborers' Fringe Benefit Programs v. Blaze Constr., Inc.*, 2002 U.S. Dist. LEXIS 26629 (D. Ohio 2002). *See also Audit Services, Inc. v. Rolfson*, 641 F.2d 757, 761 (9th Cir. 1981); *Manning v. Wiscombe*, 498 F.2d 1311, 1313 (10th Cir. 1974). In *Clark v. Ryan*, 818 F.2d 1102, 1105 (4th Cir. 1987), the Employer argued that the agreement's health and welfare fund provision which requires contributions from "employees represented by Local 697" must be read to require payments only for union members. The Court disagreed.

> The agreement's preamble designated the union as the exclusive bargaining representative for "all persons employed by [the contractors] in the craft classification set forth in Article I." "All persons" and "all employees" do not mean "some". This provision makes it clear that when the health and welfare provision refers to "employees represented by Local 697," it means all of [the employer's] employees, both union members and non-members, who perform a particular type of work.

*See also Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 319 (6th Cir. 1984); *Washington Area Carpenters' v. Overhead Door*, 220 U.S. App. D.C. 273, 681

F.2d 1, 10 (D.C. Cir. 1982); *Audit Services, Inc. v. Rolfson*, 641 F.2d 757, 761 (9th Cir. 1981); *Carpenters and Millwrights Health Benefit Trust Fund v. Gardineer Dry Walling Co.*, 573 F.2d 1172, 1177 (10th Cir. 1978); *Painters Dist. Council No. 3 Pension Fund v. Johnson*, 566 F. Supp. 592, 598-99 (W.D. Mo. 1983); *Markt v. Ro-Mart, Inc.*, 471 F. Supp. 1292, 1296-97 (N.D. Cal. 1979).

Here, both CBAs contain "recognition clauses" that provides for "Trade Autonomy" over carpentry work. The AGC Agreement provides, at Article I, "[t]his Agreement shall cover 'Trade Autonomy' and 'Work Description' of the United Brotherhood of Carpenters and Joiner of America" as defined herein." It further provides that its claim of jurisdiction extends over the following divisions and subdivisions of the trade: Carpenters and Joiners, Core Drillers, Piledrivers, etc. Exhibit F. Likewise, the CIRI contains, in Article V, a union recognition clause which provides, "[t]he Employer recognizes the Union as the exclusive bargaining representative for all employees performing work under the terms of this Agreement." Exhibit G, p 4. It too contains a jurisdictional clause providing that Local 94's claim of jurisdiction applies to the work of carpentry within the 39 cities and town of Rhode Island. Id. at p 3. Thus, the jurisdiction of Local 94 is defined in the CBAs according to job classification, not union membership, and all individuals performing carpentry work are covered by the CBAs.

**3. The CBAs do not distinguish between union and non-union employees**

The absence of language distinguishing union and non-union employees indicates that the agreement covers all employees. *Carpenters and Millwrights Health Benefit Trust Fund v. Gardineer Dry Walling Co.*, 573 F.2d 1172, 1177 (10th Cir. 1978). *See also Cincinnati Bengals, Inc. v. Thompson*, 553 F. Supp. 1011, 1014 (S.D. Ohio 1983); *Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 318 (6th Cir. 1984); *Murphy's Tire*, 1998

U.S. Dist. LEXIS 19369, *13-14, *Plumbers Local Union No. 112 Pension, Health & Educ. & Apprenticeship Plans ex rel. Fish v. Mauro's Plumbing, Heating & Fire Suppression, Inc.,* 84 F. Supp. 2d 344, *8 (D.N.Y. 2000). "[T]he absence of any distinction in the agreements between union and non-union members can be easily explained: the law does not permit such a distinction. . . . An employer may not encourage or discourage membership by means of discrimination." *Murphy's Tire*, at *6 (*quoting Byrnes v. DeBolt Transfer, Inc.,* 741 F.2d 620, 624 (3d Cir. 1984)(citing 29 U.S.C. § 158(a)(3))); *Mauro's Plumbing*, at *9 (quoting same); *Demolition Workers Union, Local 95 v. Mackroyce Contr. Corp.*, 2000 U.S. Dist. LEXIS 3548, 14-16 (D.N.Y. 2000).

Other courts have consistently construed collective bargaining agreements as unequivocally obligating an employer to contribute to an employee benefit plan for all its employees, irrespective of union membership. *See, e.g., D.E.W.*, 957 F.2d at 201; *Trustees of Asbestos Workers Local Union No. 25 Ins. Trust Fund v. Metro Insulators, Inc.*, 902 F.2d 1569, 1990 WL 67403, at *5 (6th Cir. 1990); *Clark v. Ryan*, 818 F.2d 1102, 1105 (4th Cir. 1987); *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 624 (3d Cir. 1984); *Manning v. Wiscombe*, 498 F.2d 1311, 1312-13 (10th Cir. 1974); *NYSA-ILA Med. and Clinical Servs. Fund v. Golten Marine Co., Inc.*, 1994 U.S. Dist. LEXIS 20280 (S.D.N.Y. Dec. 21, 1994); *Central States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc.,* 1992 U.S. Dist. LEXIS 10768, at *1 (N.D. Ill. July 20, 1992), *aff'd,* 69 F.3d 1312 (7th Cir. 1995), *cert. denied*, 517 U.S. 1134, (1996); *New York State Teamsters Council Health and Hosp. Fund v. City of Utica*, 643 F. Supp. 619, 621-22 (N.D.N.Y. 1986); *Central States, Southeast and Southwest Areas Pension Fund v. Capitol City Lumber Co.*, 627 F. Supp. 974, 980 (W.D. Mich. 1985); *Trustees of the B.A.C. Local 32 Ins. Fund v. Fantin Ent., Inc.*, 163 F.3d 965, 969 (6th Cir. 1998) ("As a matter of law,

collective bargaining agreements may require employers to contribute to funds for all employees, not just employees who are members of the union."); *Trustees of the B.A.C. Local 32 Ins. Fund v. Fantin Enters.*, 163 F.3d 965, 970 (6th Cir. 1998). This is true even in cases where an employer had from the inception of the contract made contributions for only union employees. *See Clark*, 818 F.2d at 1105 (discussing *Manning v. Wiscombe*, 498 F.2d 1311 (10th Cir. 1974)).

Because neither of the CBAs distinguishes between union and non-union carpenters, the CBAs cover all carpenters, irrespective of their union membership status.

**4. The CBAs contain union shop clauses**

The presence of a union shop clause in a CBA suggests that agreement extends to all employees, both union and non-union. *See Blaze Constr., Inc., supra.* Both CBAs contain union shop clauses requiring that "all employees covered by this agreement shall… become and remain members of the Union in good standing." See Exhibit F at Article III and Exhibit G at Articles V.[6] These clauses suggest that the agreement extends to all employees, both union and non-union. Id. at *13, *citing Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 318-319 (6th Cir. 1984).

In *Kohn Beverage Co.,* the court held that

> to construe the term "employees" to mean union members would render the language of the union shop clause surplusage. The union shop clause requires "that all employees covered by this agreement . . . become and remain members in good standing in the Union. . . ." This language suggests that "employees covered by this agreement" may exist prior to and apart from union-member employees. The district court interpreted the term "employees" to mean "union-member employees." This construction effectively interprets the union shop clause to require union members to become union members, and renders the clause meaningless. "A contract will not be construed so as to reject any words as surplusage if they reasonably can be given meaning." *Union Investment Company*

[6] A union shop clause is intended to prevent employees from enjoying a "free ride" by accepting the benefits of union representation without shouldering any responsibility for its support. Id. at *13.

> *v. Fidelity & Deposit Company of Maryland*, 549 F.2d 1107, 1110 (6th Cir. 1977).

*Id.*

Defendant argues that "[i]t would be nonsensical to require employer to tender stamps to workers in other trade unions, to whom they would be worthless." See Defendant's Motion, p. 22. However, as indicated above, all employees performing covered work are obligated under the CBAs to become union members. Likewise, "all carpenter employees" must participate in the Stamp Plan. See Exhibit F at Article X and Exhibit G at Article XII. Thus, if Defendant had complied with the CBAs by requiring its carpenter employees to become union members and participants in the Stamp Plan, it would make perfect sense for it to tender stamps to its employees.

Moreover, an employee need not be a union member to receive and redeem stamps. The Trust Agreements grant the trustees the authority to provide benefits to nonunion members. See Exhibits A, B and C at Section 4.2 ("The Trustees shall have full authority to make benefits available for or on account of the following: a. an employer's employees who are not in a bargaining unit represented by a Union.").[7] The Vacation Fund Trust Agreement provides,

> [t]he undersigned employer agrees to pay to the Rhode Island Carpenters Vacation Fund monies set forth in an existing agreement [the AGC Agreement] to be deducted from the wages for each hour worked… *of each employee engaged in the carpenters and joiners trade* working under the terms and conditions of any existing contract.

See Exhibit D, last page (emphasis added). Obviously, the trustees would not be given the authority to provide benefits to non-members without the concomitant authority to collect contributions on behalf of non-members.

---

[7] These clauses also belie Defendant's assertion that an employee means a member of a bargaining unit. See Defendant's Motion at 23.

Finally, Article V of the CIRI Agreement provides, "[i]n requesting the discharge of a carpenter employee for failure to comply with the terms of this Article, the Union shall serve notice… setting forth that the discharge is request for non-payment of the dues or initiation fees uniformly required to acquire and retain membership in the Union." Section 8b of Article V provides, "[t]he Employer shall not be obligated to discharge any carpenter employee for non-membership in the union…" Clearly, the term "carpenter" must apply to union members as well as non-union members. If not, Article V would provide for the discharge of a union member for failing to become a union member. Obviously, this would render Article V meaningless.

**B. The Affidavit of David Palmisciano Supports Plaintiffs' Interpretation**

Contrary to Defendant's assertion, the Rule 30(b)(6) testimony of David Palmisciano does not resolve any alleged ambiguity with respect to the CBA language in Defendant's favor. See Defendant's Motion at 24. On the contrary, David Palmisciano's testimony supports Plaintiffs' interpretation.

David Palmisciano was designated by the each of the Funds to testify in a Rule 30(b)(6) deposition on February 2, 2006. As Mr. Palmisciano's Affidavit states, all employees who perform covered work, whether or not they are members of Local 94, are considered carpenter employees under the CBAs. See Affidavit of David Palmisciano, Exhibit 2 at p. 2. His deposition testimony supports his Affidavit. Beginning on page 50 at line 24, Mr. Palmisciano testified as follows:

> Q. Okay. I want you to focus just on this issue. What part of this Collective Bargaining Agreement, Exhibit 5 [the CIRI Agreement], is it that you say required Trevi Icos to make reports and make contributions for the work in question in this lawsuit? And I'll ask you if it specifically is the first sentence in Section 1 of Article 12, and I'll refer you also to Section 3, remittance due date.
>
> A. Okay.

MR. GURSKY: Excuse me.

Q. Do those two sections constitute what you believe to be the contract basis within article – or Exhibit 5 for what you claim Trevi Icos should have done?

MR. GURSKY: Objection, form. Go ahead.

A. I believe that the entire paragraph in Section 1 –

Q. Okay.

A. -- but looking at the bottom, okay, looking at the last two sentences – I mean, the whole thing is applicable, in my view, but most importantly "the stamp plan shall be mandatory and all carpenter employees" *–and we know the word carpenter is now pile driver* – "employees shall participate. No wages shall be paid in lieu of benefits."

So specifically we're saying that those benefits need to be paid on all the employees whether they're considered to be carpenters or pile drivers.

...

So, again, we're talking about pile drivers, *work performed*, and we're also talking about the deductions, dues checkoff, vacation.

...

Q. And tell me again, what is a carpenter employee?

A. As defined in the Collective Bargaining Agreement?

Q. Yes.

A. *A carpenter employee would be somebody who's doing covered work as described in this agreement.*

Q. A member of Local 94?

A. Yes

Exhibit H.

As Mr. Palmisciano's noted in his Affidavit, members of Local 94 perform covered work. But that does not mean that everyone who performs covered work is a member of Local 94. Rather, as Mr. Palmisciano clearly testified, "[a] carpenter employee would be somebody who's doing covered work as described in this agreement." Exhibit H, p. 54 ll 2-4. Mr. Palmisciano was never asked during the deposition if the definition "carpenter employee" includes non-union members as well as members of Local 94. However, in his Affidavit, he states, "all employees who perform covered work, whether or not they are members of Local 94, are considered

carpenter employees and/or carpenters under the Collective Bargaining Agreement." Exhibit 2 at p. 3.

## CONCLUSION

For all of the forgoing reasons, Defendant's Motion for Summary Judgment must be denied.

Rhode Island Carpenters
Annuity Fund, et. al.,
By their attorneys,

Elizabeth Wiens, Esq. (#6827)
Marc B. Gursky, Esq. (#2818)
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Suite C
North Kingstown, RI 02852
Tel. (401)294-4700
Fax (401)294-4702

## CERTIFICATION

I hereby certify that a true copy of the within document was sent by regular mail, postage prepaid, to R. Daniel Prentiss, One Financial Plaza, Suite 1800, Providence, RI 02903 on this 24 day of April, 2006.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND CARPENTERS ANNUITY FUND, RHODE ISLAND CARPENTERS PENSION FUND, RHODE ISLAND CARPENTERS VACATION FUND, RHODE ISLAND CARPTENTERS HEALTH FUND and DONALD LAVIN, in his official capacity as Co-Administrator of the Funds, *Plaintiffs*, | : | |
| v. | : | C.A. No. 04-163S |
| TREVIICOS CORPORATION, *Defendant*. | : | |

**PLAINTIFF RHODE ISLAND CARPENTERS' VACATION FUND'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Plaintiff Rhode Island Carpenters' Vacation Fund ("Fund") hereby responds to the first set of interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure served by Defendant as follows:

**INTERROGATORY NO. 1:**

Identify by name and title the person signing the answers to these interrogatories on behalf of the Fund and, further, identify by name and title every person consulted or who participated in the preparation of these answers, and identify each interrogatory to which each person contributed.

**ANSWER NO. 1:**

Objection insofar as Defendant seeks information protected by the attorney-client privilege and work-produce doctrine. Without waiving said objection, Donald Lavin, Co-Administrator of Funds signed these interrogatories and Bill Holmes, Trustee, Rhode

Island Carpenters Annuity Fund, was consulted on Interrogatories 3, 7, 9, 10, 24. Plaintiff's attorneys were also consulted.

**INTERROGATORY NO. 2:**

Identify the relationship of plaintiff Donald Lavin to the Fund, and identify any and all documents which describe of [sic] define that relationship.

**ANSWER NO. 2:**

Donald Lavin is the co-administrator of the Fund. The Trust Agreement describes the relationship.

**INTERROGATORY NO. 3:**

Identify all fiduciaries and/or administrators of the Fund.

**ANSWER NO. 3:**

The administrators of the Fund are Donald Lavin and Valerie Campana. The fiduciaries are William Holmes, David Palmisciano, Thomas Savoie, Paul Lander, David Rampone, Sean McMullen, David Maron, Thomas Purcell.

**INTERROGATORY NO. 4:**

Identify the individuals, and their relationship to the Fund, who authorized the Fund to initiate this litigation.

**ANSWER NO. 4:**

The Board of Trustees for the Fund authorized the Fund to initiate this litigation.

**INTERROGATORY NO. 5:**

Identify any action taken by the individuals identified in response to the previous interrogatory to authorize the initiation of this litigation, including in your answer identification of any and all documents that recorded or memorialized such action.

**ANSWER NO. 10:**

Defendant is a signatory to the Massachusetts Pile Drivers Local Union 56 collective bargaining agreement. Also, according to Greg Sanchez's deposition testimony, Defendant is also party to a collective bargaining agreement with the Rhode Island Carpenters Union. Pursuant to the aforementioned agreement, Defendant is also party to the Agreement and Declaration of Trust.

**INTERROGATORY NO. 11:**

State all facts on the basis of which you claim that the CBA and the Declaration of Trust are binding on the defendant.

**ANSWER NO. 11:**

Accordingly to Greg Sanchez's deposition testimony, Defendant is party to the CBA through the Foundation of Marine Contractors Association. Defendant has also adopted the CBA and Agreement of Declaration of Trust by making contributions to the Funds and abiding by the CBA. Defendant is also party to a CBA with Massachusetts Pile Drivers Local Union 56.

**INTERROGATORY NO. 12:**

State all facts and documents upon which you rely to allege that the defendant "[f]ailed to submit timely payroll reports to the Funds for the period of January 2003 through November 2003" as alleged in paragraph 14(a) of the Complaint.

**ANSWER NO. 12:**

No payroll reports have been received by the Fund on behalf of individuals who were performing work associated with the operation of the CM-120 at the Warwick Sewer Treatment Plant in 2003.

**INTERROGATORY NO. 13:**

Identify by name, address, duties, work performed and dates and hours worked, the members of Local 94 for whom the defendant failed to submit timely payroll reports, as alleged in paragraph 14(a) of the Complaint.

**ANSWER NO. 13:**

Because Defendant failed to utilize members of Local 94 to perform work associated with the operation of the CM-120, Plaintiff cannot respond to this interrogatory.

**INTERROGATORY NO. 14:**

State all facts and documents upon which you rely to allege that the defendant "[f]ailed to make timely contributions to the Fund for the period of January 2003 through November 2003" as alleged in paragraph 14(b) of the Complaint.

**ANSWER NO. 14:**

No contributions have been received by the Fund on behalf of individuals who were not, at the time covered by this lawsuit, members of Local 94 ("non-union members") but who were performing work covered under the CBA.

**INTERROGATORY NO. 15:**

Identify by name, address, duties, work performed and hours worked, the members of Local 94 for whom the defendant failed to make timely contributions to the Fund, as alleged in paragraph 14(b) of the Complaint.

**ANSWER NO. 15:**

Because Defendant failed to utilize members of Local 94 to perform work associated with the operation of the CM-120, Plaintiff cannot respond to this interrogatory.

**INTERROGATORY NO. 16:**

Identify the specific work performed, the dates and hours on which it was performed, the individuals who performed the work, and whether or not such individuals are members of Local 94, for which you claim that the defendant failed to make timely contributions to the Fund, as alleged in paragraph 14(b) of the Complaint.

**ANSWER NO. 16:**

The specific work performed is the pouring of cement in association with the creation of secant walls, aligning the casing prior to drilling, assembling the CM-120 and any other work associated with the CM-120, excluding the actual operation of the CM-120. The work was performed in 2003 at the Warwick Sewer Treatment Plan. The individuals who performed the work are, upon information and belief, members of the Laborers Union and Operating Engineers Union. The names of the individuals cannot be identified unless and until Defendant answers Plaintiffs' First Set of Interrogatories No. 6 regarding the type of work performed by certain members of the Laborers' Union. Similarly, the dates and hours on which the work was performed cannot be determined until Defendant provides answers to Plaintiff's Interrogatory No. 6.

**INTERROGATORY NO. 17:**

State the amount of the contributions claimed due and payable as part of paragraph 14(b) of the Complaint and explain the method of computation thereof.

# EXHIBIT 2

APR 2 0 2006

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| RHODE ISLAND CARPENTERS ANNUITY FUND, RHODE ISLAND CARPENTERS PENSION FUND, RHODE ISLAND CARPENTERS VACATION FUND, RHODE ISLAND CARPTENTERS HEALTH FUND and DONALD LAVIN, in his official capacity as Co-Administrator of the Funds, *Plaintiffs*, | |
| v. | C.A. No. 04-163S |
| TREVI ICOS CORPORATION, *Defendant*. | |

**AFFIDAVIT OF DAVID PALMISCIANO**

I, David Palmisciano, being first duly sworn, depose and state as follows:

1. On February 2, 2006, I appeared to give deposition testimony as the 30(b)(6) designee of Plaintiffs Rhode Island Carpenters' Annuity Fund, Rhode Island Carpenters' Pension Fund, Rhode Island Carpenters' Vacation Fund and Rhode Island Carpenters' Health Fund ("the Funds").

2. The deposition was suspended prior to its completion. To this date, the deposition has not been completed.

3. On or about April 3, 2006, my attorneys received a Motion for Summary Judgment from Defendant. The Motion relies, in part, on my deposition testimony. Attached to the Motion were portions of the deposition transcript.

4. Upon receipt of the Motion, I reviewed the deposition transcript as well as relevant portions of the Motion for Summary Judgment. I noticed that, in the Motion, my deposition testimony was taken out of context. Accordingly, I wish to clarify my testimony.

5. On pages 53 and 54 of the deposition transcript I responded to questions by Defendant's attorney as follows:

Q. And tell me again, what is a carpenter employee?
A. As defined in the Collective Bargaining Agreement?
Q. Yes.
A. A carpenter employee would be somebody who's doing covered work as described in this agreement.
Q. A member of Local 94?
A. Yes

6. Under the Collective Bargaining Agreement, a carpenter employee is an employee who is performing covered work, i.e. carpentry work. Most employees who perform covered work are members of Local 94. Indeed, the Collective Bargaining Agreement requires employees who are performing covered work to become members of Local 94. However, it is not the case, and I did not mean to suggest by my testimony, that employees who are not members of Local 94 cannot be "carpenter employees" under the Collective Bargaining Agreement. Rather, all employees who perform covered work, whether or not they are members of Local 94, are considered carpenter employees and/or carpenters under the Collective Bargaining Agreement.

7. Likewise, on page 47-49 of the transcript I testified as follows:

Q. I'm just asking if you have any particular reference within this agreement as to what the term "carpenters and apprentices" means of how it is defined?
A. I think if you go to Section 1 on Page 2 in Article 2, it is agreed and understood that work to be performed by the heavy and highway construction carpenters, pile drivers, divers and tenders such as driving and pulling, and it goes on and continues to describe.
Q. So does carpenter and apprentice mean members of the union?

A. Correct. If you look at Section 3, there's the better description. "When the term carpenter, pile driver, welder, dock builder, diver or diver tender is used in this agreement, it shall be synonymous."

8. When asked if "carpenter and apprentice mean members of the union," I did not mean to suggest that non-union members cannot be carpenters and apprentices under the Collective Bargaining Agreement. Rather, at the time, I understood the question to be asking whether the terms pile driver, welder dockbuilder, etc. were included in the phrase "carpenter and apprentice." Indeed, I go on to clarify my answer, testifying that in Section 3, there is a better description: the terms carpenter, pile driver, etc. are to be synonymous.

9. On page 66 of the deposition transcript I testified as follow:

Q. So do the CBAs incorporate the terms and provisions of the trust agreements such as Exhibit 14?
MR. GURSKY: Object to the form of the question. Go ahead.
A. I believe in each agreement in Exhibits 5 and 6 there are references to the trust agreements which obligate those contractors to comply with the provisions of the trust agreements.
Q. Do the definitions of terms contained within the trust agreements apply through the CBAs to employers such as Trevi Icos?
MR. GURSKY: Objection, form.
A. I believe so, yes.

10. I understood the question to ask whether the terms contained in the trust agreement apply, through the CBA, to employers. The trust agreements, and all their definitions and terms, apply to employers by virtue of the fact that said employers agreed to abide by the trust agreements when they signed the collective bargaining agreement. However, I did not mean to imply that the definitions of terms in the Trust Agreement apply to the terms used in the Collective Bargaining Agreement. On the contrary, the Collective Bargaining Agreement has its own definitional section just as the Trust Agreements have their own definitional sections.

11. The foregoing is true and correct to the best of my knowledge.

Dated: April 18, 2006

I, David Palmisciano, being first duly sworn, on oath depose and state that I have read the foregoing affidavit and that the factual allegations contained therein are true to the best of my knowledge and belief.

David Palmisciano

Subscribed and sworn to before me, by David Palmisciano, this 18 day of April, 2006.

William Holmes
NOTARY PUBLIC
My commission expires on: 2/17/09