UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND CARPENTERS ANNUITY FUND, RHODE ISLAND CARPENTERS PENSION FUND, RHODE ISLAND CARPENTERS VACATION FUND, RHODE ISLAND CARPENTERS HEALTH FUND and DONALD LAVIN, in his official capacity as Co-Administrator of the Funds, Plaintiffs, | : | |
| v. | : | C.A. No. 04-163S |
| TREVI ICOS CORPORATION, Defendant. | : | |

**REPLY MEMORANDUM OF TREVI ICOS CORPORATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. THE CASELAW RELIED ON BY THE PLAINTIFFS DEAL WITH CONTRACTS THAT ARE SUBSTANTIVELY DIFFERENT FROM THE COLLECTIVE BARGAINING AGREEMENTS AT ISSUE IN THIS CASE.

The Plaintiffs lead their argument on the contract construction issues before the Court with the assertion that, "as a matter of law, collective bargaining agreements may require an employer to contribute to funds for all employees, not just employees who are members of the union," quoting *Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Enterprises*, 163 F.2d 965 (6th Cir. 1998). That proposition is not contested. The question is not what parties *may* contract to do; rather, the question is what did *these* parties contract to do. A comparison of the collective

bargaining agreements alleged to be at issue here with those that are dealt with in the cases on which the Plaintiffs rely buttresses the Defendant's argument that there is no duty of contribution under the agreements before the Court.

The principal decision dealing with the reach of contribution obligations under collective bargaining agreements is *Teamsters Local 348 Health and Welfare Fund v. Kohn Beverage Company*, 749 F.2d 315 (6th Cir. 1984). *See* Plaintiffs' Memorandum of Law In Support of Objection to Motion for Summary Judgment ("Plaintiffs' Mem.") at 7. *Kohn* identifies four factors as being pertinent to determining the scope of coverage of a collective bargaining agreement. The first factor it mentioned is whether the term "employee" is defined in the agreement by job classification.[1] The court stated that it "has construed a definition of employees by job classification to require coverage by the collective bargaining agreement of all employees within those classifications, regardless of union membership." *Kohn, supra,* 749 F.2d at 318. Other decisions cited by the Plaintiffs deal with contracts with similar definitions of employees. *Cf. Clark v. Ryan,* 818 F.2d 1102, 1105 (4th ir. 1986)("The language of the relevant agreements repeatedly refers to the type of work performed, not to the status of union membership."); *Audit Services, Inc. v. Rolfson,* 641 F.2d 757, 761 (agreement defining employee to mean "any employee of employer who performs work covered by a collective bargaining agreement, `whether such Employee is Union, Non-Union, permanent or temporary.'").

[1] *Kohn* quoted the agreement at issue there as stating that "the term `employee,' as used in this Agreement shall include Driver-Salesmen, Special Drivers, Swing Drivers, Over-the-Road Drivers, Helpers and Warehousemen, Garage Mechanics, and Garage Maintenance Employees." *Id*, 749 F.2d at 318.

There is no such broad, inclusive definition of the term "employee" in either of the collective bargaining agreements at issue here; in fact, neither the AGC CBA nor the CIRI CBA contains *any* definition of the term "employee." Three of the four trust agreements, that are referred to and incorporated in the CBAs, unambiguously define "employee" as a member of the union.

Hence, consideration of the first of the *Kohn* factors sharply distinguishes the CBAs here from those in which courts have held an employer's contribution obligation to cover all employees.

The second factor considered by the *Kohn* court was whether the CBA contained a "recognition clause." The Plaintiffs assert that the CBAs here contain recognition clauses, and urge that this factor favors their position. Plaintiffs' Mem. at 11. There are two infirmities with the Plaintiffs' argument on this point. First, only one of the CBAs, the CIRI CBA, has a recognition clause (Article V). Second, the CIRI CBA's recognition clause is not nearly as broad as the one relied on in *Kohn*. The CIRI CBA states that the Union is recognized as the exclusive bargaining representative "for *all employees performing work under the terms of this Agreement*" (emphasis supplied). This is to be distinguished from the recognition clause in *Kohn*, (designating the union as the exclusive bargaining agent "*for all employees*," *id.*, at 318 (emphasis supplied). *Cf. Clark v. Ryan*, *supra* (union recognized as bargaining agent for "all persons employed [by contractors] in the craft classification set forth in Article I"); *Boards of Trustees of the Ohio Laborers'*

*Fringe Benefit Programs v. Blaze Constr., Inc.* 2002 WL 31951267 (S.D. Ohio)(Not reported in F. Supp. 2d).

This distinction is critical. In most of the decisions relied on by the Plaintiffs, the employer had both union and non-union employees performing the same work. *Clark v. Ryan, supra,* 818 F.2d at 1104; *Kohn, supra*, 749 F.2d at 317; *Byrnes v. DeBolt Transfer, Inc.* 741 F.2d 620, at 622 (3d Cir. 1984); *Audit Services, Inc. v. Rolfson*, 641 F.2d at 759; *Blaze Constr., supra,* 2002 WL 31951267 at * 2; *Konyha v, Isco, Inc.* 1983 WL 2068 (D.D.C.) at *1. There was no question of jurisdiction, no issue whether the employees in question were performing work that came within the classifications of the collective bargaining agreements. The only question before these courts was whether the employer was obligated to make contributions to benefits plans for work performed by non-union employees that unquestionably came within the scope of the collective bargaining agreement.

Here, on the other hand, the CBAs expressly recognize that employers will have more than one trade represented on a job site, and that therefore the Union is not intended to be the exclusive bargaining agent for *all* of a contractor's employees. The CBAs' jurisdictional dispute resolution provisions are the mechanism established by the contracting parties to address the issue that lies at the heart of this controversy: determination of the applicability of the CBAs to specific work. The CIRI CBA recognizes the Union as the bargaining agent for employees performing the work that falls within the reach of the CBA. The potentially

endless breadth (and circularity) of this recognition is cabined by the external control of arbitration to define the agreement's reach.

Hence, the second of the *Kohn* factors, too, militates against the position of the Plaintiffs in this litigation. The recognition clause of the CIRI CBA does not connote an intention to bring all employees within the reach of the agreement; just the opposite, the agreement's reach is clearly limited by the extent of the Union's jurisdiction, as distinguished from the jurisdictions of other unions on the job site.

The third *Kohn* factor is whether the collective bargaining agreement distinguishes between union and non-union employees. That factor is not relevant here, where there is no issue regarding non-union employees. Here, the issue is which union has jurisdiction over specific work conducted by an employer. This factor can be applied to the present case by analogy: whether the CBAs distinguish between employees in different unions. The answer to that question is that they do so distinguish. By making elaborate provision for the resolution of jurisdictional disputes, the CBAs explicitly recognize the potential for unions competing for jurisdiction, thereby accepting that employees who fall outside of what is determined to be the Union's jurisdiction are to be treated differently from those within.

The fourth *Kohn* factor is the existence of a union shop clause in the collective bargaining agreement. *Kohn*'s treatment of this issue is a bit murky ( 749 F.2d at 318), seeming to rely on it principally to point out the district court's error in relying on this clause to rule against the plaintiff benefits funds. Presumably, the presence

of a union shop clause would support the proposition that the collective bargaining agreement is intended to cover all employees, both union and non. *Cf. Blaze Constr., supra,* at *4.

This, like the second factor, is not really applicable here, where there is no issue of union versus non-union employees. The CBAs both contain union shop clauses, but those clauses are essentially circular: employees performing work covered by the CBAs are required to become members of the Union. CIRI CBA, Art. V; AGC CBA, Art. III. From the Plaintiffs' standpoint, this factor is at best neutral on the issue of the reach of the CBAs to require contributions to the Plaintiff funds for employees affiliated with other unions.

The issue presented in this case is closely akin to what was addressed in *Trustees of the B.A.C. Local 32 Insurance Fund v. Ohio Ceiling and Partition Co., Inc.*, 48 Fed. Appx. 188 (6th Cir. 2002) (unpublished opinion). There, the trustees of employee benefit plans for one union (Bricklayers) sued a contractor for contributions associated with work that was performed by members of another union (Carpenters) for whom the contractor had made all requisite contributions to Carpenter benefits plans. *Id.* at 190. The Bricklayers funds claimed that the contractor had assented to the jurisdiction of the Bricklayers funds through a "Traveling Contractor" provision of a CBA that the contractor had signed with one Bricklayer local. The job in question was tile, marble, and terrazzo ("T-M-T") work, which was claimed by both Carpenters and Bricklayers as within their jurisdictions.

After holding that the Traveling Contractor clause did not support the Bricklayers funds claim, the Sixth Circuit made an observation that is particularly pertinent here: "We are sympathetic to the district court's concern about the use of ERISA to press a jurisdictional dispute over the assignment of T-M-T work." *Id.* at 197-8.[2] This is exactly the circumstance presented to this Court. Trevi Icos submits that it should cause similar concern here.

In order for the Plaintiff funds to survive the motion for summary judgment, they "must show that the Agreement creates an unambiguous contractual obligation on [Trevi Icos} to make contributions pursuant to the contended provisions." *Trustees of B.A.C. v. Driscoll*, 165 F.Supp 2d 502, 510 (S.D.N.Y. 2001). The Plaintiffs clearly cannot do that here. The CIRI CBA and the AGC CBA unambiguously point to exactly the opposite conclusion.

## II. THE PLAINTIFFS SHOULD NOT BE PERMITTED TO AMEND THEIR RULE 30(b)(6) TESTIMONY THROUGH A SELF-SERVING AFFIDAVIT.

David Palmisciano was appointed by the Plaintiffs to provide their testimony on topics pertinent to this motion pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. He was specifically authorized to give the Plaintiffs' official testimony regarding the CBAs. His testimony on the meaning of terms within the CBAs was rather clear: the term employee means a member of the union. This testimony is binding on the Plaintiffs. *Trustees of B.A.C. v. Driscoll, supra* 165

---

[2] The Sixth Circuit quoted the district court: "The Court has some major concerns in this particular case. The Court believes essentially [that] the fund and its trustees used this case as a jurisdictional dispute. And I think to some extent they have to reexamine their fiduciary duties. … These kinds of cases cannot be used for jurisdictional disputes or anything of that nature." *Ohio Ceiling and Part. Co.*, 48 Fed.Appx at 196.

F.Supp 2d at 512 (union official's deposition testimony (not taken pursuant to Rule 30(b)(6) was binding as an admission of the union).

A party resisting summary judgment may not create an issue of fact by submitting an affidavit that contradicts the party's earlier sworn testimony at deposition. *Reid v. Sears Roebuck and Co.* 790 F.2d 453, 460 (6th Cir. 1986); *Driscoll, supra.* The affidavit should be stricken; Trevi Icos has submitted a motion to strike this affidavit with this Reply Memorandum.

## III. PLAINTIFFS IMPERMISSIBLY ATTEMPT TO HAVE IT BOTH WAYS REGARDING THE STATUS OF THEIR ADMINISTRATOR.

Each of the Plaintiff funds provided the identical answer to the interrogatory seeking the identity of "all fiduciaries and/or administrators of the Fund:

> The administrators of the Fund are Donald Lavin and Valerie Campana. The fiduciaries are William Holmes, David Palisciano, Thomas Savoie, Paul Lander, David Rampone, Sean McMullen, David Maron, Thomas Purcell.

*See* Tab 1

Now, in response to Trevi Icos's motion for summary judgment, the Plaintiffs assert that the administrators *are* fiduciaries, based on ERISA principles enunciated in case law. Trevi Icos submits that the case law cannot trump the administrative structure of the specific plans that are before the Court.

While it is true that there are numerous decisions in which courts have held employee benefits plan administrators to be fiduciaries for the purpose of standing and jurisdiction to bring suit under ERISA 29 U.S.C. §1132 (*e.g., Griggs v. E. I. Dupont de Nemours & Co.*, 237 F.3d 371, 379 (4th Cir. 2001)). Those cases do not address the question that is presented here: where the plans specifically exclude the

plan administrators from the roster of plan fiduciaries, are they nevertheless fiduciaries for the purposes of 29 U.S.C. §1132? The decisions that hold administrators to be fiduciaries hinge on the discretionary nature of the functions they performed ("as administrator of the plan, DuPont is a fiduciary for purposes of ERISA when it is engaged in the administration or management of its pension plan," *Griggs, supra*). It is undoubtedly true that the Plaintiff funds could have granted their administrators with discretionary authority to perform fiduciary functions; they could have been named fiduciaries in the plans themselves. They were not. The Plaintiffs disavowed any fiduciary status for the administrators in their answers to interrogatories. They have provided no evidence to the court that is cognizable under Fed. R. Civ. P. 56 from which the Court could find that these administrators perform duties that endow them with the fiduciary mantle.

Consequently, for the reasons stated in Trevi Icos's memorandum in support of summary judgment, the named Plaintiffs have no standing to bring this action, and the Court lacks jurisdiction to hear it.

Respectfully submitted,

TREVIICOS Corporation,
By its attorneys,

**R. DANIEL PRENTISS, P.C.**

R. Daniel Prentiss (#0783)
One Financial Plaza, Suite 1800
Providence, RI 02903
Tel. 401-824-5150
Fax: 401-824-5123

**CERTIFICATION**

I certify that on this 3rd day of May, 2006 I sent a copy of the within document via first class mail, postage-prepaid, to the following:

Elizabeth Wiens, Esq.
Gursky Law Associates
420 Scrabbletown Road, Suite C
North Kingstown, RI 02852

[signature]

Island Carpenters Annuity Fund, was consulted on Interrogatories 3, 7, 9, 10, 24. Plaintiff's attorneys were also consulted.

**INTERROGATORY NO. 2:**

Identify the relationship of plaintiff Donald Lavin to the Fund, and identify any and all documents which describe of [sic] define that relationship.

**ANSWER NO. 2:**

Donald Lavin is the co-administrator of the Fund. The Trust Agreement describes the relationship.

**INTERROGATORY NO. 3:**

Identify all fiduciaries and/or administrators of the Fund.

**ANSWER NO. 3:**

The administrators of the Fund are Donald Lavin and Valerie Campana. The fiduciaries are William Holmes, David Palmisciano, Thomas Savoie, Paul Lander, David Rampone, Sean McMullen, David Maron, Thomas Purcell.

**INTERROGATORY NO. 4:**

Identify the individuals, and their relationship to the Fund, who authorized the Fund to initiate this litigation.

**ANSWER NO. 4:**

The Board of Trustees for the Fund authorized the Fund to initiate this litigation.

**INTERROGATORY NO. 5:**

Identify any action taken by the individuals identified in response to the previous interrogatory to authorize the initiation of this litigation, including in your answer identification of any and all documents that recorded or memorialized such action.