**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RHODE ISLAND CARPENTERS ANNUITY FUND, RHODE ISLAND CARPENTERS PENSION FUND, RHODE ISLAND CARPENTERS VACATION FUND, RHODE ISLAND CARPTENTERS HEALTH FUND and DONALD LAVIN, in his official capacity as Co-Administrator of the Funds, *Plaintiffs*, | : | |
| v. | : | C.A. No. 04-163S |
| TREVIICOS CORPORATION, *Defendant*. | : | |

**PLAINTIFFS' PRETRIAL MEMORANDUM**

Plaintiffs Rhode Island Carpenters Annuity Fund, et. al., by and through their undersigned counsel, submit the following pretrial memorandum:

**A. CLAIMS AND WITNESSES**

In support of their claims, Plaintiffs intend to prove the following, utilizing the following witness:

1. That Defendant is a party to a collective bargaining agreement ("CBA") with the Carpenters Union Local 94 ("Local 94") which obligates Defendant to make contributions to the Rhode Island Carpenters Benefits Funds. **Witnesses:** David Palmisciano and Thomas Savoie, Business Representatives for Local 94, Bill Holmes, President of Local 94, Greg Sanchez, area manager for Trevi icos.

2. That, pursuant to that CBA, Defendant is obligated to submit contributions to the Funds on behalf of all employees who performed "covered work," as defined in the CBA;

**Witnesses:** David Palmisciano and William Holmes, Union Trustees of the Benefit Funds, David Maron and Sean McMullen, Employer Trustees of the Benefit Funds.

3. That said contributions are due regardless of whether the individuals performing the work are members of Local 94, members of another union or non-union members.

**Witnesses:** David Palmisciano and William Holmes, Union Trustees of the Benefit Funds, David Maron and Sean McMullen, Employer Trustees of the Benefit Funds.

4. That "covered work" includes the installation of secant piles. **Witnesses:** David Palmisciano and William Holmes, Union Trustees of the Benefit Funds, David Maron and Sean McMullen, Employer Trustees of the Benefit Funds.

5. That, in or about March, 2003, Defendant began utilizing workers from the Laborers Union to perform "covered work" in violation of the CBA. **Witnesses:** David Palmisciano, Thomas Savoie and William Holmes, Union Trustees of the Benefit Funds, David Maron and Sean McMullen, Employer Trustees of the Benefit Funds

6. That Defendant failed to submit contributions to the Funds for hours spent performing such "covered work." **Witnesses:** David Palmisciano and Donald Lavin, Co-Administrator of the Benefit Funds.

7. That Defendant's failure to submit contributions violates the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 <u>et seq</u>.

8. That, for the period of March 2003 through March 2004, Defendant owes contributions to the Funds for 6,547.5 hours of "covered work" performed by Laborers.

**Witnesses**: Donald Lavin, David Palmisciano, Thomas Savoie, and Gerald Lagesse, Superintendent for Hart Engineering.

9. That the contribution rates for the period March 2003 through December 2003 was $13.95 per hour work and the rate for the period of January 2004 through March 2004 was $14.95 per hour. **Witness:** Donald Lavin.

10. That, under the Trust Agreements, interest is calculated on delinquent contributions at the prime rate as set by Bank of America, which, for the period of March 2003 through March 2004 was 4% per year. **Witness:** Donald Lavin.

11. That, pursuant to ERISA and the Trust Agreements, Plaintiffs are entitled to receive a 20% penalty on all delinquent contributions. **Witness:** Donald Lavin.

12. That Plaintiffs are entitled to damages in the amount of $153,369.03 for unpaid contributions, interest, penalties, attorneys' fees and costs. See Summary of Claim, attached. **Witness:** Donald Lavin.

**B. MEMORANDUM OF SUPPORTING LAW**

**1. DEFENDANT HAS AN OBLIGATION TO CONTRIBUTE TO THE FUNDS ON BEHALF OF ALL INDIVIDUALS PERFORMING COVERED WORK**

Trevi Icos is bound to two CBAs with Local 94 which require that fringe benefit contributions be made on behalf of any and all employees performing covered work, *irrespective of union member status.*

**a. The Plain Language of the CBAs Require Contributions for All Employees**

"As a matter of law, collective bargaining agreements may require employers to contribute to funds for all employees, not just employees who are members of the Union." *Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Enterprises, Inc.*, 163 F.2d 965, 969-70 (6th Cir. 1998). Courts have established four factors to consider when determining whether a collective bargaining agreement covers non-union members. *See*

*Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 318 (6th Cir. 1984). The first factor examines how the worker is defined. The second factor is whether the contract contains a "recognition clause" designating the union as the exclusive bargaining agent for all employees. *Id*. The third factor is whether the language of the agreement otherwise distinguishes union employees from non-union employees. *Id.* And finally, the Court must consider whether the contract contains a "union shop clause," which would require any employee not currently a union member to become one within a stated time period. *Id. See also Bds. of Trs. of the Ohio Laborers' Fringe Benefit Programs v. Blaze Constr., Inc.*, 2002 U.S. Dist. LEXIS 26629 (D. Ohio 2002).

**i. "Carpenter" is defined in reference to job classification**

Article X Section 1 of the AGC Agreement provides, "The Employer agrees to continue in effect a Stamp Plan, instituted January 1, 1977, providing for the purchase of stamps in varying denominations by Employer, *to be tendered to all carpenters and apprentices with their payroll checks."* (Emphasis added). Article I defines a "carpenter" as "one who prefabs or constructs form…" It does not limit the definition of "carpenter" to union members. The definition of carpenter by reference to job classification suggests coverage by the collective bargaining agreement of all employees within those classifications, regardless of union membership. *See Kohn Beverage Co.*, 749 F.2d at 318. Thus, Defendant is required to make fringe benefit contributions on behalf of all employees, whether union members or not. *See Board of Trustees of the Ohio Laborers' Fringe Benefit Programs v. Blaze Construction, Inc.*, 2002 U.S. Dist. LEXIS 26629, *11 (the definition of employee by reference to job classification coverage by the collective bargaining agreement, rather than union membership, is evidence that

employers must make fringe contributions on behalf of all employees, whether union members or not).

In *Trustees of the Glaziers v. Glass Masters Ltd.*, 2003 U.S. Dist. LEXIS 6526, 30 Employee Benefits Cas. (BNA) 2119, the employer bound itself to CBAs with two different unions. The bargaining unit work of one union's CBA encompassed employees who performed work covered under the Plaintiffs' Trust Agreement (hereinafter referred to as "glazing work"). The Court held that, even though the glazing work was not performed by members of the Glaziers Union, the Employer was still obligated to contribute to the Glaziers' benefit and pension funds. The Trustees' claims are based on contracts and not principles of labor law and cover whole bargaining units, not just members of the particular union. "[I]f the CBA provides that Glaziers are to perform glazing work, an employer cannot avoid the fund obligations by assigning work to non-union members or members of another union." Id at *4. Thus, as long as the work performed was covered work under the CBA, contributions are due.

Likewise, in *Konyha v. Isco, Inc.*, 1983 U.S. Dist. LEXIS 17277, 4 BNA 1546, like here, the employer had made contributions on behalf of carpenters who were union members, but it contended that the terms of the agreement did not obligate it to make contributions on behalf of non-union carpenters. There were two provisions at issue. Section 1(b) provided, "It is further agreed that during the period of this agreement, the applicable hourly wage rate for commercial and industrial work in Local #71, Fort Smith, shall be as follows: pension .60." Section 1(e) provides,

> The undersigned contractors beginning May 1, 1979, will pay the sum of forty-five cents (45) per hour into the Arkansas State Council of Carpenters Health and Welfare Trust Funds and thirty-five cents (35) into Welfare Trust Funds and thirty-five cents (35) into the National

> Carpenters Pension Trust Fund *on all members* of the United Brotherhood of Carpenters and Joiners of America working within the jurisdiction of participating Carpenter Local Union. (Contributions on behalf of Fort Smith Local #71 shall be made to these funds in the amount set out in . . . [the section 1(b) schedule]" (emphasis added).

The Employer argued that section 1(e) required it to make contributions only on behalf of union members, and section 1(b) does not specify whether only union members are covered. Therefore, section 1(e) controls and it is not obligated to make contributions on behalf of non-union member employees. In granting partial summary judgment in favor of the trustees, the court held that to the extent that section 1(e) implied that contributions would not have been made on behalf of non-union member employees, it was illegal under the National Labor Relations Act, which prohibits the encouragement or discouragement of union membership by discrimination in terms of conditions of employment. The Court struck that provision from the agreement. The Court then examined section 1(b) and found that it unambiguously imposes a duty upon defendant to contribute to the pension fund on behalf of all union member and non-union member employees working within the jurisdiction of Local Union 71.

Moreover, Article V of the AGC Agreement, and Article VII of the CIRI Agreement, provide, “[t]he Employer shall have the right to employ any carpenter who is a member in good standing of any local affiliate of the New England Regional Council of Carpenters…” Obviously, if a “carpenter” was defined as “a member of Local 94,” Articles V and VII would be meaningless.

**ii. The CBAs contain “recognition clauses”**

The presence in an agreement of a recognition clause indicates that fringe benefit contributions are required for both union and non-union members. *Bds. of Trs. of the*

*Ohio Laborers' Fringe Benefit Programs v. Blaze Constr., Inc.*, 2002 U.S. Dist. LEXIS 26629 (D. Ohio 2002). *See also Audit Services, Inc. v. Rolfson*, 641 F.2d 757, 761 (9th Cir. 1981); *Manning v. Wiscombe*, 498 F.2d 1311, 1313 (10th Cir. 1974). In *Clark v. Ryan*, 818 F.2d 1102, 1105 (4th Cir. 1987), the Employer argued that the agreement's health and welfare fund provision which requires contributions from "employees represented by Local 697" must be read to require payments only for union members. The Court disagreed.

> The agreement's preamble designated the union as the exclusive bargaining representative for "all persons employed by [the contractors] in the craft classification set forth in Article I." "All persons" and "all employees" do not mean "some". This provision makes it clear that when the health and welfare provision refers to "employees represented by Local 697," it means all of [the employer's] employees, both union members and non-members, who perform a particular type of work.

*See also Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 319 (6th Cir. 1984); *Washington Area Carpenters' v. Overhead Door*, 220 U.S. App. D.C. 273, 681 F.2d 1, 10 (D.C. Cir. 1982); *Audit Services, Inc. v. Rolfson*, 641 F.2d 757, 761 (9th Cir. 1981); *Carpenters and Millwrights Health Benefit Trust Fund v. Gardineer Dry Walling Co.*, 573 F.2d 1172, 1177 (10th Cir. 1978); *Painters Dist. Council No. 3 Pension Fund v. Johnson*, 566 F. Supp. 592, 598-99 (W.D. Mo. 1983); *Markt v. Ro-Mart, Inc.*, 471 F. Supp. 1292, 1296-97 (N.D. Cal. 1979).

Here, both CBAs contain "recognition clauses" that provides for "Trade Autonomy" over carpentry work. The AGC Agreement provides, at Article I, "[t]his Agreement shall cover 'Trade Autonomy' and 'Work Description' of the United Brotherhood of Carpenters and Joiner of America" as defined herein." It further provides that its claim of jurisdiction extends over the following divisions and subdivisions of the

trade: Carpenters and Joiners, Core Drillers, Piledrivers, etc. Likewise, the CIRI contains, in Article V, a union recognition clause which provides, "[t]he Employer recognizes the Union as the exclusive bargaining representative for all employees performing work under the terms of this Agreement." It, too, contains a jurisdictional clause providing that Local 94's claim of jurisdiction applies to the work of carpentry within the 39 cities and town of Rhode Island. Id. at p 3. Thus, the jurisdiction of Local 94 is defined in the CBAs according to job classification, not union membership, and all individuals performing carpentry work are covered by the CBAs.

**iii. The CBAs do not distinguish between union and non-union employees**

The absence of language distinguishing union and non-union employees indicates that the agreement covers all employees. *Carpenters and Millwrights Health Benefit Trust Fund v. Gardineer Dry Walling Co.*, 573 F.2d 1172, 1177 (10th Cir. 1978). *See also Cincinnati Bengals, Inc. v. Thompson*, 553 F. Supp. 1011, 1014 (S.D. Ohio 1983); *Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 318 (6th Cir. 1984); *Murphy's Tire*, 1998 U.S. Dist. LEXIS 19369, *13-14, *Plumbers Local Union No. 112 Pension, Health & Educ. & Apprenticeship Plans ex rel. Fish v. Mauro's Plumbing, Heating & Fire Suppression, Inc.*, 84 F. Supp. 2d 344, *8 (D.N.Y. 2000). "[T]he absence of any distinction in the agreements between union and non-union members can be easily explained: the law does not permit such a distinction. . . . An employer may not encourage or discourage membership by means of discrimination." *Murphy's Tire*, at *6 (*quoting Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 624 (3d Cir. 1984)(citing 29 U.S.C. § 158(a)(3))); *Mauro's Plumbing*, at *9 (quoting same);

*Demolition Workers Union, Local 95 v. Mackroyce Contr. Corp.*, 2000 U.S. Dist. LEXIS 3548, 14-16 (D.N.Y. 2000).

Other courts have consistently construed collective bargaining agreements as unequivocally obligating an employer to contribute to an employee benefit plan for all its employees, irrespective of union membership. *See, e.g., D.E.W.*, 957 F.2d at 201; *Trustees of Asbestos Workers Local Union No. 25 Ins. Trust Fund v. Metro Insulators, Inc.*, 902 F.2d 1569, 1990 WL 67403, at *5 (6th Cir. 1990); *Clark v. Ryan*, 818 F.2d 1102, 1105 (4th Cir. 1987); *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 624 (3d Cir. 1984); *Manning v. Wiscombe*, 498 F.2d 1311, 1312-13 (10th Cir. 1974); *NYSA-ILA Med. and Clinical Servs. Fund v. Golten Marine Co., Inc.*, 1994 U.S. Dist. LEXIS 20280 (S.D.N.Y. Dec. 21, 1994); *Central States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc.*, 1992 U.S. Dist. LEXIS 10768, at *1 (N.D. Ill. July 20, 1992), *aff'd*, 69 F.3d 1312 (7th Cir. 1995), *cert. denied*, 517 U.S. 1134, (1996); *New York State Teamsters Council Health and Hosp. Fund v. City of Utica*, 643 F. Supp. 619, 621-22 (N.D.N.Y. 1986); *Central States, Southeast and Southwest Areas Pension Fund v. Capitol City Lumber Co.*, 627 F. Supp. 974, 980 (W.D. Mich. 1985); *Trustees of the B.A.C. Local 32 Ins. Fund v. Fantin Ent., Inc.*, 163 F.3d 965, 969 (6th Cir. 1998) ("As a matter of law, collective bargaining agreements may require employers to contribute to funds for all employees, not just employees who are members of the union."); *Trustees of the B.A.C. Local 32 Ins. Fund v. Fantin Enters.*, 163 F.3d 965, 970 (6th Cir. 1998). This is true even in cases where an employer had from the inception of the contract made contributions for only union employees. *See Clark*, 818 F.2d at 1105 (discussing *Manning v. Wiscombe*, 498 F.2d 1311 (10th Cir. 1974)).

Because neither of the CBAs distinguishes between union and non-union carpenters, the CBAs cover all carpenters, irrespective of their union membership status.

**iv. The CBAs contain union shop clauses**

The presence of a union shop clause in a CBA suggests that that agreement extends to all employees, both union and non-union. *See Blaze Constr., Inc., supra.* Both CBAs contain union shop clauses requiring that "all employees covered by this agreement shall… become and remain members of the Union in good standing."[1] These clauses suggest that the agreement extends to all employees, both union and non-union. Id. at *13, *citing Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 318-319 (6th Cir. 1984).

In *Kohn Beverage Co.*, the court held that

> to construe the term "employees" to mean union members would render the language of the union shop clause surplusage. The union shop clause requires "that all employees covered by this agreement . . . become and remain members in good standing in the Union. . . ." This language suggests that "employees covered by this agreement" may exist prior to and apart from union-member employees. The district court interpreted the term "employees" to mean "union-member employees." This construction effectively interprets the union shop clause to require union members to become union members, and renders the clause meaningless. "A contract will not be construed so as to reject any words as surplusage if they reasonably can be given meaning." *Union Investment Company v. Fidelity & Deposit Company of Maryland*, 549 F.2d 1107, 1110 (6th Cir. 1977).

*Id.*

Defendant argued in its Motion for Summary Judgment that "[i]t would be nonsensical to require employer to tender stamps to workers in other trade unions, to whom they would be worthless." See Defendant's Motion, p. 22. However, as indicated above, all employees performing covered work are obligated under the CBAs to become

[1] A union shop clause is intended to prevent employees from enjoying a "free ride" by accepting the benefits of union representation without shouldering any responsibility for its support. Id. at *13.

union members. Likewise, "all carpenter employees" must participate in the Stamp Plan. Thus, if Defendant had complied with the CBAs by requiring its carpenter employees to become union members and participants in the Stamp Plan, it would make perfect sense for it to tender stamps to its employees.

Moreover, an employee need not be a union member to receive and redeem stamps. The Trust Agreements grant the trustees the authority to provide benefits to nonunion members. Sections 4.2 ("The Trustees shall have full authority to make benefits available for or on account of the following: a. an employer's employees who are not in a bargaining unit represented by a Union.").[2] The Vacation Fund Trust Agreement provides,

> [t]he undersigned employer agrees to pay to the Rhode Island Carpenters Vacation Fund monies set forth in an existing agreement [the AGC Agreement] to be deducted from the wages for each hour worked… *of each employee engaged in the carpenters and joiners trade* working under the terms and conditions of any existing contract.

(Emphasis added). Obviously, the trustees would not be given the authority to provide benefits to non-members without the concomitant authority to collect contributions on behalf of non-members.

Finally, Article V of the CIRI Agreement provides, "[i]n requesting the discharge of a carpenter employee for failure to comply with the terms of this Article, the Union shall serve notice… setting forth that the discharge is request for non-payment of the dues or initiation fees uniformly required to acquire and retain membership in the Union." Section 8b of Article V provides, "[t]he Employer shall not be obligated to discharge any carpenter employee for non-membership in the union…" Clearly, the term "carpenter"

---

[2] These clauses also belie Defendant's assertion that an employee means a member of a bargaining unit. See Defendant's Motion at 23.

must apply to union members as well as non-union members. If not, Article V would provide for the discharge of a union member for failing to become a union member. Obviously, this would render Article V meaningless.

**2. DEFENDANT'S FAILURE TO SUBMIT CONTRIBUTIONS TO THE FUNDS VIOLATES ERISA**

The elements of a claim under Section 515 of ERISA, 29 U.S.C. §1145, are (1) Defendant is obligated to make contributions to a multi-employer plan under the terms of an agreement; and (2) Defendant has not made such contributions. Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), authorizes a civil action to enforce the contribution requirement of Section 515 of ERISA, 29 U.S.C. §1145. In an action to collect delinquent contribution pursuant to 29 U.S.C. §1132, if Plaintiffs prevail, they are entitled to the unpaid contributions, as well as interest, penalties, and the attorneys' fees and costs expended in prosecuting the action.

**C. <u>EXHIBITS</u>**

1. Massachusetts Pile Drivers Local Union 56 and the Foundation and Marin Contractors Association of New England collective bargaining agreement 2000-2004.

2. Massachusetts Pile Drivers Local Union 56 Acceptance of Agreement signed by Icos Corporation of America.

3. Two page correspondence from Trevi icos Corporation to Massachusetts Pile Drivers Local Union 56 dated July 23, 1997 indicating Icos is now operating as Trevi icos Corporation.

4. Remittance Reports from Trevi icos to the Rhode Island Carpenters Benefits Funds for the period of March 2003 through December 2003.

5. Collective Bargaining Agreement dated June 4, 2001 between the New England Regional Council of Carpenters Local Union 94 and the Construction Industries of Rhode Island.

6. Collective Bargaining Agreement dated June 4, 2001 New England Regional Council of Carpenters Local Union 94 and the Labor Relations Division of the Associated General Contractors of Rhode Island, Inc.

7. Trust Agreement of February 2, 1972 between the Providence, Pawtucket and Central Falls Carpenters Distirct Council of the United Brotherhood of Carpenters and Joiners of America and the Rhode Island Chapter, Associated General Contractors of American, Inc., creating the Rhode Island Carpenters Vacation Fund.

8. The Agreement and Declaration of Trust dated January 1, 1976 between the Rhode Island Chapter, Associated General Contractors of America, Inc. and the Rhode Island District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America creating the Rhode Island Carpenters Health Fund.

9. The Agreement and Declaration of Trust dated January 1, 1980 between the Rhode Island Chapter, Associated General Contractors of America, Inc. and the Rhode Island District Council of Carpenters creating the Rhode Island Carpenters Annuity Fund.

10. The Agreement and Declaration of Trust dated January 1, 1976 between the Rhode Island Chapter, Associated General Contractors of America, Inc. and the Rhode Island District Council of Carpenters creating the Rhode Island Carpenters Pension Fund and the First Amendment to the Trust of January 1, 1984.

11. SoilMec DVD regarding the operation of the CM-120.

12. Six page document entitled CM-120 Hydraulic rotary describing pile drilling with the CM-120.

13. Hart Engineering's Daily Work Logs for the period of April 2003 through June 2003.

14. Trevi icos notes regarding Warwick Project dated March 4, 2003. (Three pages).

15. Trevi icos daily narratives re: Warwick Wastewater Plant for the period of March 19, 2003 through July 21, 2003.

16. Warwick Sewer Authority Contract Documents for Advanced Wastewater Treatment Facility, Contract No. 71D, Section 02400, Concrete Diaphragm Walls and Tremie Seal Construction, and its addenda.

17. Transmittal cover sheet from Hart Engineering to Trevi icos re: Diaphragm Wall Submittal dated August 22, 2002 with six page attachment.

18. Fax Cover Sheet with two page attachment from Jim Ramos of Hart Engineering to Greg Sanchez of Trevi icos dated July 2, 2003.

19. Fax Transmittal Sheet with four page attachment from Gordon Chen of Weidlinger Associates to Greg Sanchez of Trevi icos dated July 15, 2003.

20. Facsimile Transmittal Sheet and two-page cover sheet from Bob Mulligan of Hart Engineering Corporation to Greg Sanches of Trevi icos dated July 16, 2003

21. Two page facsimile from James Ramos of Hart Engineering to Greg Sanchez of Trevi icos dated September 30, 2003.

22. Ten page Telefax message from Greg Sanchez to Bob Houghton at Spencer White and Prentis dated October 17, 2003.

23. Certified Payroll records for the period of March 2003 through December 2003 (minus the months August through October 2003).

24. Laborers Local 271 Remittance Reports for the period of March 2003 through December 2003.

25. Spreadsheet created by Trevi icos and produced in discovery indicating hours worked by members of Local 271 for the period of March 2003 through December 2003.

26. Rhode Island Carpenters Benefit Funds hourly stamp rate breakdown for 2003

27. Rhode Island Carpenters Benefit Funds hourly stamp rate breakdown for 2004

28. Four-page Spreadsheet indicating damages.

29. Defendant's Answers to Plaintiff's Interrogatories.

30. Defendant's Response to Plaintiffs' First Request for Production of Documents.

31. Defendant's Response to Plaintiffs' Second Request for Production of Documents.

**D. <u>ANTICIPATED MOTIONS IN LIMINE</u>**

None.

**E. <u>JURY INSTRUCTIONS</u>**

Not Applicable.

**F. <u>PROBABLE LENGTH OF TRIAL</u>**

Plaintiffs require at least a full day to put on their evidence.

**G. <u>ADDITIONAL MATTERS</u>**

None.

Respectfully submitted,
On behalf of the Plaintiffs,
By their attorney,

/s/ Elizabeth A. Wiens
Elizabeth Wiens, Esq. #6827
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Ste. C
North Kingstown, R.I. 02852
Tel. (401) 294-4700
Fax. (401) 294-4702

Dated: March 15, 2007

CERTIFICATION

I hereby certify that I electronically filed the within Pretrial Memorandum on March 15, 2007. The Memorandum is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the individual below has been effectuated by electronic means.

Daniel Prentiss, Esq.
R. Daniel Prentiss, P.C.
One Turks Head Plaza, Suite 380
Providence, Rhode Island 02903

Elizabeth A. Wiens