**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RHODE ISLAND CARPENTERS ANNUITY FUND, RHODE ISLAND CARPENTERS PENSION FUND, RHODE ISLAND CARPENTERS VACATION FUND, RHODE ISLAND CARPTENTERS HEALTH FUND and DONALD LAVIN, in his official capacity as Co-Administrator of the Funds, *Plaintiffs*, | : | |
| v. | : | C.A. No. 04-163S |
| TREVIICOS CORPORATION, *Defendant*. | : | |

02 2007

**PLAINTIFF'S DESIGNATION OF DEPOSITION OF DAVID PALMISCIANO**

Deposition of Plaintiffs Rhode Island Carpenters Annuity Fund, Rhode Island Carpenters Pension Fund, Rhode Island Carpenters Vacation Fund, and Rhode Island Carpenters Health Fund, pursuant to Rule 30(b)(6), through David Palmisciano, taken February 2, 2006:

20:19–21:25, 31:12-21, 32:25-34:2, 47:19-49:6, 50:24-54:7, 65:25-67:9.

Respectfully submitted,
On behalf of Plaintiff,
By his attorney,

Elizabeth Wiens, Esq. #6827
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Ste. C
North Kingstown, R.I. 02852
Tel. (401) 294-4700
Fax. (401) 294-4702

## CERTIFICATION

I hereby certify that a true copy of the within document was sent by regular mail to the parties listed below on this 1st day of May, 2007.

Daniel Prentiss, Esq.
R. Daniel Prentiss, P.C.
One Turks Head Plaza, Suite 380
Providence, Rhode Island 02903

Robert D. City
City, Hayes & Dissette, P.C.
50 Congress Street
Suite 200
Boston, MA 02109

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND CARPENTERS ANNUITY FUND,
RHODE ISLAND CARPENTERS PENSION FUND,
RHODE ISLAND CARPENTERS VACATION FUND,
RHODE ISLAND CARPENTERS HEALTH FUND, and
DONALD LAVIN, in his official capacity as
Co-Administrator of the Funds,

vs. C.A. No. 04-163S

TREVI ICOS CORPORATION,

DEPOSITION OF DAVID F. PALMISCIANO, a witness in the above-entitled cause, taken on behalf of the Defendant, before Devin J. Baccari, CSR, a Notary Public in and for the State of Rhode Island, at the Law Office of Holland & Knight, One Financial Plaza, Providence, Rhode Island, on February 2, 2006, scheduled at 10:00 a.m.

PRESENT:

FOR THE PLAINTIFF

GURSKY LAW ASSOCIATES
BY: MARC GURSKY, ESQUIRE

FOR THE DEFENDANT

HOLLAND & KNIGHT, LLP
BY: DANIEL PRENTISS, ESQUIRE

ALLIED COURT REPORTERS
115 PHENIX AVENUE
CRANSTON, RHODE ISLAND 02920
(401) 946-5500
www.alliedcourtreporters.com

INDEX


WITNESS PAGE

DAVID F. PALMISCIANO

EXAMINATION BY MR. PRENTISS............ 3


EXHIBITS


| No. | DESCRIPTION | PAGE |
|---|---|---|
| (Defendant's) | | |
| 1 | DEPOSITION NOTICE | 5 |
| 2 | DEPOSITION NOTICE | 5 |
| 3 | DEPOSITION NOTICE | 5 |
| 4 | DEPOSITION NOTICE | 5 |
| 5 | COLLECTIVE BARGAINING AGREEMENT BETWEEN UNION AND INDUSTRIES OF RHODE ISLAND | 12 |
| 6 | COLLECTIVE BARGAINING AGREEMENT BETWEEN UNION AND THE AGC | 12 |
| 7 | ANSWERS TO INTERROGATORIES FILED BY THE PLAINTIFF FUNDS | 16 |
| 8 | ANSWERS TO INTERROGATORIES FILED BY PLAINTIFF FUNDS | 16 |
| 9 | ANSWERS TO INTERROGATORIES FILED BY PLAINTIFF FUNDS | 16 |
| 10 | ANSWERS TO INTERROGATORIES FILED BY PLAINTIFF FUNDS | 16 |
| 11 | ANSWERS TO INTERROGATORIES FILED BY PLAINTIFF FUNDS | 16 |
| 12 | COMPLAINT | 22 |
| 13 | AGENDA FOR PENSION FUND FOR 10/21/03 | 24 |
| 14 | AGREEMENT AND DECLARATION OF TRUST FOR THE PENSION FUND | 56 |
| 15 | AGREEMENT AND DECLARATION OF TRUST FOR THE ANNUITY FUND | 56 |
| 16 | AGREEMENT AND DECLARATION OF TRUST FOR THE HEALTH FUND | 56 |
| 17 | AGREEMENT AND DECLARATION OF TRUST FOR THE VACATION FUND | 56 |
| 18 | PORTION OF THE MEETING MINUTES OF 10/21/03 | 59 |




(DEPOSITION COMMENCED AT 10:06 a.m.)
DAVID F. PALMISCIANO,
Being duly sworn, deposes and testifies as follows:
EXAMINATION BY MR. PRENTISS
Q. State your name, please.
A. David F. Palmisciano, P-A-L-M-I-S-C-I-A-N-O.
Q. Where are you employed?
A. I'm employed by the New England Regional Council of Carpenters.
Q. What's your job there?
A. Senior business rep.
Q. What does that job entail?
A. Actually, I have approximately three or four other business reps who work under me in Rhode Island and I'm in charge of their day-to-day duties as well as overseeing grievances, arbitrations, contract negotiations, all sorts of things, all sorts of fun things like that.
Q. Okay. You're aware -- you're appearing here to give deposition in a lawsuit?
A. Correct.
Q. And it's a lawsuit that was brought by certain funds that have some relationship to the Council?
A. Yes.
Q. Okay. Have you ever given a deposition before?



A. Yes.
Q. So you're aware generally of how this procedure works?
A. Correct.
MR. PRENTISS: Will you just as a primary ground rule accept this, which is don't answer any question that I give you that you don't understand.
THE WITNESS: Okay.
MR. PRENTISS: If you don't understand a question, tell me and I'll do everything I can to clarify it.
THE WITNESS: Fine.
MR. PRENTISS: If you answer a question the record is going to assume that you understood the question and you are answering the question as it was phrased.
THE WITNESS: Okay.
MR. PRENTISS: Do you understand that?
THE WITNESS: Yeah.
MR. PRENTISS: Great. Thanks.
Q. You are appearing here as a witness designated by the various plaintiffs -- plaintiff funds pursuant to deposition notices that were issued in this case, are you aware of that?



A. Yes.
MR. PRENTISS: I'm going to -- I've had the deposition notices premarked as Exhibits 1 through 4. And since I've already marked them, I'll give them to you to take a look at.
(Defendant's Exhibits 1 through 4 were so marked.)
Q. Can you look at those, Mr. Palmisciano, and tell me whether you have seen them before.
A. Yes.
Q. Just go ahead and, at least, breeze through them a bit so you are familiar with what each of the documents is. There are four separate documents which are, I think, generally identical except that they're addressed to the four different funds.
(Witness complied.)
A. Okay.
Q. All right. You understand that you have been designated by each of the plaintiff funds, the annuity fund, the pension fund, vacation fund and the health fund to be the person to respond to my questions on all of the topics in these deposition notices Exhibits 1 through 4?
A. Yes.

Page 6

Q. What have you done to prepare yourself to answer questions on all these topics?
A. I met with attorneys at Marc's office the other day, reviewed several documents, looked at Mr. Sanchez's deposition. I believe I was present for Sanchez's deposition, so I just was refreshing my memory on that. And I went through some of the questions that were -- they seemed to be repetitive through each fund, so I think after two it was pretty apparent that they were the same.
Q. Right. Do you remember what documents you have reviewed to prepare to come here?
A. I looked at our Collective Bargaining Agreement. Local 94's Collective Bargaining Agreement would probably be the better way of putting it. I also looked at Local 56's Collective Bargaining Agreement and I did look at some of the -- some of the trust agreements, I believe, I reviewed, just touched on some of the trusts that are incorporated in Local 94's agreements.
Q. What's Local 56?
A. Local 56 is the pile drivers local -- affiliate local in Massachusetts. It's part of

Page 7

the New England Regional Council of Carpenters just like Local 94 is a part.
Q. What is the relationship of Local 56 to this lawsuit?
A. None.
Q. So why did you look at that document?
A. I believe we looked at it simply because the company signed the 56 agreement.
Q. Okay.
A. And that agreement rolled into our agreement.
Q. "The company," you mean Trevi Icos, the defendant in this case?
A. Actually, it was a company called Trevi, I believe, that signed originally and then they became a joint venture partner with Icos and then it became a company called Trevi Icos. And it was -- I was just looking at those agreements to make sure that everything was in place for the successor agreements.
Q. You said in your previous answer something to the effect that the Local 56 agreement was rolled into this. Did I get that right?
A. Actually, it's a little bit more -- probably needs a little bit more explanation than that.
Q. Can you explain that.

Page 8

A. New England Regional Council of Carpenters was formed in July of 1996 and the International -- Carpenters International put together 26 local unions, I believe, in six New England states and formed a regional council. That regional council became what is known today as the New England Regional Council of Carpenters of which I am an employee. Local 56 was also one of the 26 locals that was incorporated into the council.
Through collective bargaining over the next several years, all the agreements -- if you were signed in Rhode Island, by signing the Rhode Island agreement you acknowledged as a contractor that you would be bound to the agreements of the other five New England states.
Q. So is this -- is this understanding, correct, that a -- an employer which signs a Collective Bargaining Agreement with one of the locals which is a member of the New England Regional Council obligates itself to comply with the Collective Bargaining Agreement of any other local which is a member where it does work in the geographic area of that other local; is that --
A. That's correct.
Q. You mentioned International Carpenters Union?

Page 9

A. Uh-huh.
Q. What is that?
A. The carpenters union has in -- its hierarchy has a structure that -- in Washington, D.C., we have -- all the unions -- all the building trades unions have international unions more like a chain of command where the international dictates to the regional council which dictates to the locals which dictates to the member. So it gives you that chain of command. Our international is in -- I believe its address is 101 Constitution Avenue in Washington, D.C.
Q. So are members of Local 94 members of the International Carpenters Union?
A. Yes.
Q. And they are members who belong to the local which is confined to a geographic region?
A. Yes.
Q. And Local 94, the geographic region is what?
A. 39 cities and towns in Rhode Island.
Q. Within the confines of the State of Rhode Island?
A. Correct.
Q. And then Local 94 itself is then a member of the New England Regional Council?
A. Correct.

Q. And the New England Regional Council covers all five New England states?
A. Six.
Q. Six New England states. What is your -- strike that.
As the business manager of Local 94, are you the chief administrative officer for that local?
A. I'm not the business manager.
Q. I'm sorry.
A. I'm the senior -- well, I'm the district business manager for Rhode Island and Connecticut which gives me senior status. There is a business manager in Rhode Island by the name of Bill Holmes. He's actually the business manager of Local 94.
Q. So you are the district business manager for the New England Regional Council?
A. For Rhode Island and Connecticut.
Q. Is there a business manager for the New England Regional Council?
A. There's an executive secretary/treasurer for the New England Regional Council of carpenters. His name is Mark Erlich, E-R-L-I-C-H, I believe.
Q. So he would be the chief administrative officer for New England Regional Council?



A. Correct.
Q. You report to him?
A. Yes.
Q. And then, in turn, do the locals within Rhode Island and Connecticut report to you?
A. Servicing reps in Rhode Island and Connecticut report to me.
Q. What is your relationship to the plaintiff funds?
A. I am Chairman of the Rhode Island Carpenters Pension and Annuity Funds. I am co-Chair of the Rhode Island Carpenters Health Fund and I am a trustee to the Rhode Island Carpenters Vacation Fund.
Q. How long have you been a trustee of any of these funds?
A. I believe 1993.
Q. And in 1993, to which funds were you appointed as a trustee?
A. I believe initially I was appointed to pension and annuity and then approximately a year later I ended up on the health and vacation, probably.
Q. How long have you been chairman of pension and annuity?
A. Around 1996.
MR. PRENTISS: Can you put a new sticker



on that. We'll make that Number 5.
(Defendant's Exhibits 5 and 6 were so marked.)
Q. Mr. Palmisciano, would you look at Exhibits 5 and 6 and tell me what they are.
A. They are the collective bargaining agreements -- the past collective bargaining agreements for Local 94 between the union and the AGC as well as the union and the Construction Industries of Rhode Island.
Q. 6 is the agreement between the union and the AGC?
A. Yes.
Q. And 5 is the one with Construction Industries of Rhode Island?
A. Yes.
Q. Describe the nature of the employers to which each of these applies. Exhibit 5, we'll start with what are the Construction Industries of Rhode Island to which this would be applicable?
A. It's -- the slang term, I guess, would be the heavy and highway contractors. Those contractors are normally -- the abundant amount of those contractors are normally road builder-type, bridges, roads, dams, you know, heavy industrial-type contractors.



The -- in 6, you're looking at the Associated General Contractors of Rhode Island which normally has more to do with building construction. This would be considered to be horizontal and this would be considered to be vertical.
Q. This -- the first this is 5?
A. 5 would be the --
Q. Horizontal?
A. Horizontal. The roads would be the horizontal and the 6 would be the vertical which is a building agreement.
Q. How would an employer such as Trevi Icos know which of these agreements would apply to it?
MR. GURSKY: I'm going to object to the form of that question.
MR. PRENTISS: You can answer.
THE WITNESS: Okay. Would you mind restating that.
MR. PRENTISS: Sure.
Q. How would an employer such as Trevi Icos know which of these agreements applies to it?
MR. GURSKY: Same objection.
A. I believe that Trevi Icos, in its prejob, understood that the document that we were

referring to for the job that he was doing in Warwick, Rhode Island, was the Construction Industries of Rhode Island and we were deeming that job as a heavy job.
Q. Who makes the determination which of these contractors applies to a particular job?
A. Usually the general contractor --
MR. GURSKY: Excuse me. Who makes it for who?
MR. PRENTISS: In general, how is a determination made?
MR. GURSKY: I'm going to object to the form of the question. Go ahead.
A. It rarely comes up that there's that gray area. This happens to be a sewer plant. On that particular plant -- we've always done those sewer plants recognizing that there are several buildings that are probably tied in but most of the other work is what we consider to be heavy work and that heavy work is done under the Construction Industries of Rhode Island agreement.
Q. In this case, the case of the job that lies behind the litigation, was there a preconstruction meeting at which issues of unions



and jurisdiction was discussed -- were discussed?
A. To the best of my knowledge, yes.
Q. Were you present?
A. No.
Q. What's the basis of your knowledge?
A. One of the agents who was present and I had a discussion about the work.
Q. Who was the agent?
A. William Holmes.
Q. Do you know whether there was discussion at a meeting in which the question whether the construction industry's contract or the AGC contract would be applicable to the job that was going to be performed by Trevi?
A. No.
Q. You said in one of your earlier answers that your belief was that Trevi Icos understood that it was coming under Exhibit 5. Did I get that right?
A. Correct.
Q. What is -- how do you know that?
A. Trevi Icos is primarily a pile driving contractor. Where there are several references to pile driving work in the building agreement, there is more descriptive sections in the construction industry's agreement.



(Off the record discussion.)
MR. PRENTISS: Let me show you -- I'm going to have several exhibits marked at once and we'll show you those and we'll talk about them.
(Defendant's Exhibits 7 through 11 were so marked.)
Q. All right. Do you recognize Exhibits 7, 8, 9, 10 and 11 as being answers to interrogatories filed by the plaintiff funds in this case?
(Off the record)
A. Okay.
Q. They are the interrogatory answers that were filed by the funds?
A. I believe so. I mean, I didn't -- they weren't discussed at a fund's meeting if that's the question.
Q. No. Just one of the topics that you were designated to come and talk about is the funds' answers to interrogatories, so --
A. These are Donald Lavin's answers --
Q. Right.
A. -- but I have not discussed with Donald Lavin what his answers were.
Q. Are you prepared to discuss the answers -- the substance of the answers to the questions?



A. Yes.
Q. Okay. With respect to Exhibit 11, Exhibit 11 is the supplemental answer of the four funds, annuity, pension, vacation and health funds to one of the interrogatories which is Interrogatory Number 8 and you see that the question asks to identify the specific provisions, that is paragraphs or -- paragraph or clause number of the agreement and declaration of trust and the CBA on which the funds rely and their allegations in the complaint. And the answer identifies Article 10 of the CBA, Collective Bargaining Agreement, with the AGC and Article 12 of the CBA with the Construction Industries of Rhode Island.
MR. GURSKY: Object to the form of the question.
MR. PRENTISS: Actually, I haven't got to the question yet.
Q. The question for you, Mr. Palmisciano, is: This interrogatory refers to two different CBAs, both Exhibit 5 and Exhibit 6?
A. Correct.
Q. Do I understand the testimony you just gave me in discussing those two contracts, those two collective bargaining agreements, that the funds,

in fact, are relying only on Exhibit 5 which is the Collective Bargaining Agreement with the construction industries for this lawsuit?
MR. GURSKY: Objection. You can answer.
A. What I'm saying is that on the work in question the agreement with the most descriptive -- that has the most descriptive amount of wording, I guess, maybe is what you want to say is that it is in that agreement. But, clearly, depending on what Trevi Icos was doing on that job, if there are buildings on the job, both agreements have exactly the same wages and exactly the same benefit payments, so there is no difference. I mean, the start times are the same, the overtime provisions are the same, everything is the same in both agreements.
We would look at this as a building job initially because of the buildings that were associated with it, but then when we get into the heavy work we would rely on the construction industry's agreement because it has more verbiage in it of describing the pile driving which Trevi Icos is a part of.
Q. The question I'm asking you, though, is: As the official spokesman for the plaintiffs in this



case, are you saying that Exhibit 5 is the contract to which Trevi Icos is bound for the job in question under this lawsuit?
MR. GURSKY: Excuse me. Objection. There's no representation that Mr. Palmisciano is the official spokesman for the plaintiffs in the case. He's the identified deponent.
MR. PRENTISS: Well, I don't want to belabor this because we're really looking to just ask questions, but he is the person designated to speak on behalf of the parties to answer these questions under the notices of deposition.
MR. GURSKY: To answer the questions of the notice of deposition. Nobody identified him as an official spokesman of the plaintiffs.
MR. PRENTISS: Let me rephrase the question.
MR. GURSKY: Good.
Q. As the designated deposition witness under the deposition notices which have been marked as Exhibits 1 through 4, which document, Exhibit 5 or Exhibit 6, is the contract which you say bound Trevi Icos for the job for which you've brought the lawsuit?
MR. GURSKY: Objection, form.



A. Both.
Q. And what's the basis for saying both?
MR. GURSKY: Same objection.
A. As I explained to you earlier, Trevi Icos by becoming a -- well, a part of the New England Regional Council of Carpenters signatory -- contractor base is signatory to both of those agreements. So either agreement, when applicable, would be the document that we would use.
If he was working under a building, then the building agreement would prevail. If he was working on a tank, which I believe he was, then probably the construction industry's agreement would prevail. I'm not 100 percent sure on what instance you're talking because I know Trevi Icos did work on the both types of scenarios on this job.
Q. What work is it that the plaintiffs claim is the work for which Trevi Icos should have made contributions to the funds?
A. Pile work.
Q. And how do you characterize pile work as between Exhibit 5 and Exhibit 6?
A. How do I categorize (sic) it?



Q. Yes.
A. As I said earlier, there are -- there is a longer definition in the construction industries about pile work than there is in the building agreement. Both have references to pile, so, I mean, either agreement would be -- could be applicable depending on what part of the project he was working on.
Q. You are either unable or unwilling, at this point, to identify a single agreement as being the contract on which you're pursuing --
A. He worked on both agreements.
MR. PRENTISS: One other rule that I wanted to ask you is please wait until I finish my question.
THE WITNESS: Okay. Sorry.
MR. GURSKY: Could you start again.
MR. PRENTISS: Yeah.
Q. Are you unable or unwilling to identify one or the other of Exhibits 5 or 6 as being the contract on which you rely in bringing this lawsuit?
MR. GURSKY: Same objection, form.
A. And my answer would be both. I believe that both contracts were applicable.

MR. PRENTISS: Would you mark that.
(Defendant's Exhibit 12 was so marked.)
Q. Do you recognize Exhibit 12 as the complaint that was filed by the plaintiff funds to start this litigation?
A. Yes.
Q. How did the topic of bringing this lawsuit first come to the attention of the plaintiff funds?
A. It was discussed at a meeting, combined funds meeting.
Q. Is that the meeting that took place October 21, 2003?
A. I believe it was, yes.
Q. Who is it who requested the inclusion of this as an agenda item for that meeting?
A. I believe it was Mr. Holmes on behalf of the union trustees.
Q. What did he say?
A. Best of my recollection was that he had a problem with Trevi Icos on a particular job site, which Trevi Icos had other trades performing work that should have been performed by carpenters, and that he was asking the trustees to move in pursuing benefit payments from Trevi Icos for work not being performed by carpenters.



Q. At the time that he asked this item to be included on the agenda, had the work already been completed?
A. It was ongoing, I believe.
MR. GURSKY: Excuse me. When you say asked to have it on the agenda, you're not talking about the meeting itself, you're talking about at some earlier point?
MR. PRENTISS: Correct.
MR. GURSKY: Okay. Are you clear on that?
THE WITNESS: Do you want me to --
MR. GURSKY: Would you just ask the question again.
MR. PRENTISS: Yeah, let me ask it again, Mr. Palmisciano.
Q. I'm asking you to focus your recollection on the time that Mr. Holmes first brought to the other trustees' attention the proposition that the trustees should discuss bringing a case, a lawsuit, against Trevi Icos which would have ultimately got on the agenda for the October 2003 meeting. That's what I'm asking.
A. My recollection is that Mr. Holmes verbalized it. It was not an agenda item, but it was placed



into the minutes. I mean, I don't have any recollection of him having it placed on a formal -- as a formal agenda item, but that's only my recollection.
MR. PRENTISS: Ask you to mark that 13.
(Defendant's Exhibit 13 was so marked.)
13
Q. Exhibit 13's a document that was provided by the lawyers for the funds to me in response to discovery requests. Does that look to you like an agenda for the pension fund for October 21, 2003?
A. It does.
Q. Now, you were the chairman of the pension fund at that time?
A. Correct.
Q. Is that true?
A. (Nods head in the affirmative).
Q. Was it up to you to prepare the agenda?
A. No.
Q. Who prepared the agenda?
A. The agendas are usually prepared by a woman by the name of Betty Pacheco who is the -- who works for Don Lavin and Valerie Campana.
Q. Was it up to you as the chairman to decide what



goes on the agenda?
A. No.
Q. So this woman you just identified would make the decisions as to what would properly go on the agenda and what would not?
A. No.
Q. Who would?
A. I believe that any of the trustees requesting an agenda item could probably get something put on the agenda. But I believe that ultimately the agendas are prepared by Don Lavin and Valerie Campana and then Mrs. Pacheco prints the agenda. I mean, that's how it would come out.
Q. And when, to the best of your recollection, did agenda Exhibit No. 13 come out, get into your hands in relation to the date of the meeting, October 21, 2003?
A. Probably at that meeting.
Q. When did you first learn of this as a topic in relation to the date of the meeting?
A. I believe I probably had a discussion with Bill Holmes prior to that meeting, but I don't remember when.
Q. What -- when the trustees reached this agenda item, did somebody make a presentation of the

background for seeking a resolution?
A. I believe Mr. Holmes probably explained his reasoning for, I guess, requesting this as an agenda item. I'm assuming that that's how it got on there. I don't believe it was me who put it on there, so -- it's not my recollection that I put it on there. And I thought it was just something that was verbalized, but if it was put on as an agenda item, it was probably put on by Bill.
Q. Do you have any recollection today of the discussion that took place at the meeting on this item?
A. Vague.
Q. What's your recollection?
A. Well, there was discussion amongst the trustees on what the circumstances were surrounding this particular problem, I guess would be the best way to put it.
Q. What were the circumstances as you understood them?
A. As I stated earlier, there were -- there was what we considered to be covered work being performed by others and benefits were not being paid.



Q. In the -- your experience working with the carpenters union and locals in the council, is it usually the case that at the beginning of a job there is some kind of discussion as to which trades are going to end up doing which work?
A. Yes.
Q. Did such a discussion take place with regard to Trevi Icos' work which is the background of this lawsuit?
A. Best of my knowledge, yes.
Q. Did the -- did Local 94 assert at that preconstruction meeting that it should have its members perform the work that is now the subject of this lawsuit?
A. Yes. From what I was told, yes.
Q. And this was told to you by Bill Holmes?
A. Correct.
Q. And did he tell you what Trevi Icos responded to that request?
A. I remember him telling me that he had conversations with Mr. Sanchez from Trevi Icos, but I'm not 100 percent sure what -- well, I am because I know what the outcome was, is that the carpenters weren't doing that work, the pile drivers weren't doing that work. So in answer to



your question that it wasn't -- but from what I understood, it was something that was being worked on.
Q. Let me go through your answer sort of sequentially.
A. Okay.
Q. You know from the outcome that Trevi Icos declined at least part of Local 94's request to put its members on some aspects of Trevi Icos' work, right?
A. It's my understanding that Trevi Icos had a different interpretation of what the work and who should be on it.
MR. GURSKY: Of what the work?
THE WITNESS: Of what work --
MR. PRENTISS: I thought you said of who should be on the work.
THE WITNESS: Of what work and who should be on the work.
MR. GURSKY: I'm sorry. I'm having trouble with this. Could you just tell me what you heard.
(The answer was read.)
MR. GURSKY: Excuse me. Is there some way I could turn this down a bit?



(Off the record.)
MR. GURSKY: Thank you.
Q. Did Trevi Icos agree with Local 94 as to some parts of the work and use of Local 94 members on some parts of the work?
A. Yes.
Q. But there were other parts of the work that Local 94 and Trevi Icos disagreed as to which trade should be doing the work; is that correct?
A. That would be a fair assumption, yeah. There was a disagreement.
Q. What specific work was it? What specific jobs was it for which there was a disagreement between Trevi Icos and Local 94 as to whether Local 94 members ought to do that particular work?
A. There was a disagreement, to the best of my knowledge, and -- okay, I'm going by memory at this point. There was an agreement on something that we call lagging. Now, lagging is a process where steel pile is driven into the ground and then these lagging boards are put between the steel pile to hold the embankment up and in Rhode Island that's always been performed by the pile driver.
Trevi Icos, when they came into Rhode Island,

was of the understanding that the pile would be driven by the pile driver and the boards would be put in by the laborer as the hole was dug.
Q. Could I stop you right there --
A. Sure.
Q. -- so I have an accurate picture, understanding of this.
As a steel pile is driven into the ground, there is some requirement for some kind of horizontal reinforcement or support?
A. No. Two pile approximately eight feet apart, you start to excavate and then you drop these boards into the web of the beam and that holds the embankment up as you're digging down. I think there was -- to the best of my knowledge, there was a problem with Trevi Icos' assignment of that work on that job.
Q. So lagging really consists of dropping wooden boards into the web of the beam?
A. Between two beams.
Q. Between two beams or between two piles?
A. Beams, piles, two piles.
Q. Okay.
A. Two piles, two beams.
Q. And Local 94 said, "That's our work." Trevi Icos



said, "We believe that's laborers' work"?
A. To the best of my knowledge. And, again, because I'm not going out onto these job sites and agents are coming to me and telling me what the different problems are on multiple job sites, it's my recollection that it wasn't just the secant pile portion of the work. There were other pieces of the Trevi Icos work that was awarded by Hart Engineering to Trevi Icos that is in dispute. Some of the stuff we were able to work out and some of it we weren't.
Q. What is a secant pile?
A. A secant pile is the operation of drilling into the ground a hole and then putting concrete into that hole and then connecting all those holes up to form a structure so that the men can work on a foundation inside of that.
Q. Okay.
A. It's an earth retention system. But by the name itself, secant pile, piles are done by pile drivers.
Q. Okay. You identified lagging as one of the types of work that you believe was in dispute. Do I understand your testimony to be that you can't specifically recall at this point what other



exact types of work may have been in dispute?
A. No, I can't because of my involvement on multiple job sites. There was also other Trevi Icos jobs running. I'm -- it's my memory that there was some problem with the lagging on that job, but Trevi Icos also had other jobs running in Providence and there could have been the dispute on the lagging on another job. I'm almost positive it was on this job. There were several problems with Trevi Icos with our jurisdictional practices here in Rhode Island which Trevi Icos was not familiar with.
Q. Let's focus, though, on the work for which this lawsuit was brought.
A. Okay.
Q. This lawsuit was brought not about work in Providence, correct?
A. Correct.
Q. It was work in Warwick?
A. Correct.
Q. It is your testimony that, to the best of your knowledge, the specific work in question was lagging?
A. No.
Q. Do you have any knowledge that you can provide



for the record identifying the specific work that is at issue in this lawsuit?
A. Secant pile.
Q. I'm asking, though, if you can identify more particular tasks that you assert should have been performed by carpenters as opposed to laborers.
A. Okay.
Q. Can you give that information?
A. I would have to go back to a basic description of the work that Local 94's agreement says that all pile driving work -- all work done in conjunction with pile driving or pile work is the work exclusively of the pile driver slash carpenter. So if we look at the work that Trevi Icos was performing -- and we're not claiming the work of operating machinery because that requires a license and operating engineers do that. I'm talking about the other work, the -- what we call ancillary work or the work that would come off from the machine, that would be work entirely performed by pile drivers. And what we had there was work being entirely performed by others.
Q. Is it your position, then, that all work in connection with the pile driving, other than the operation of the machinery, is work that should

have been performed by carpenters?
A. Correct.
Q. You testified a couple of answers ago that this dispute between Trevi Icos and Local 94, some of the dispute was able to be worked out and some not?
A. Correct.
Q. When was it worked out? The work that was able to be worked out, when did that occur?
A. Probably on the job site at various times.
Q. Was it worked out at the preconstruction meeting?
A. I don't believe so.
Q. During the course of the job, did Local 94 become aware that there were some areas that they just couldn't work out with Trevi Icos?
A. Yes.
Q. What did Local 94 do at the point that it had a job that it -- for which it claimed jurisdiction and Trevi Icos said, "no, that's laborers" to assert its rights?
A. I believe that there were several conversations with the general contractor on-site as far as what its obligations were under the Collective Bargaining Agreement. I believe those discussions took some time. And we finally



reached an accord with the general contractor who, in his opinion, had awarded the work to a contractor who had an agreement with us. And, therefore, he -- as it says in our agreement, that he's not responsible for his lower tier sub's awards. We did probably spend some time chasing it that way hoping that he could convince Trevi Icos to make an award that would be more favorable to us.
Q. Did he?
A. No.
Q. When the union learned that he was unable to convince Trevi Icos, what did the union do?
A. I believe that Mr. Holmes had conversations with Mr. Sanchez and then I believe it just got dropped.
Q. Who dropped it?
A. Either one of them, I guess.
Q. Mr. Holmes decided not to pursue it?
MR. GURSKY: I object.
A. That's not what I said.
MR. GURSKY: I'm going to object to the form of the question.
A. What I said was that I think it was dropped by both parties, playing telephone tag, whatever. I



mean, I've never -- I've asked Bill and he just said that, you know, it got by him, you know, for a point -- for a point in time. And then, you know, this job didn't go every day five days a week. It went and it stopped. There were some design problems. There was a whole bunch of stuff going on over there. It went. It, you know, stopped.
We had guys working for Trevi doing other tasks on the jobs. You know what I mean? There were problems unloading trucks, if I remember correctly, because there weren't pile drivers there. They were only laborers. There was material being unloaded that should have been unloaded by pile drivers. There were a host of different problems on-site which the general contractor did get involved in.
Q. You say the general contractor did get involved in some of these issues?
A. To the best of my recollection.
Q. How?
A. How?
Q. Yes.
A. Conversations with Bill and with the general -- the superintendent on that particular



site who happens to live in the same town as I do who I met in a grocery store and told me that there were problems on-site. I did have a conversation with the superintendent, his name was Jerry Legess, and he's the one, I think, who told me that there was something that needed to be unloaded by pile drivers and they didn't have any pile drivers on the job and they had to use the general contractor's carpenters and then they had to get paid back by Trevi Icos through a back charge or something like that. So there was involvement by the GC on covered work that seemed to ease the problem temporarily.
MR. PRENTISS: Could you turn to Exhibits 5 and 6, the two CBAs.
THE WITNESS: Yes. Which ones?
MR. PRENTISS: Well, let's start with 5.
THE WITNESS: Okay.
Q. Now that we've sort of focused your description of the work on the work relative to secant piles other than operation of the machinery, does that help you define whether it -- that work would fall under Exhibit 5 or Exhibit 6?
MR. GURSKY: Object to the form.
A. As I said earlier, I believe it falls under

both.
Q. All right. That doesn't help me -- defining it further into secant pile work doesn't help you to identify one as opposed to both?
A. In Exhibit 5, which you asked me to look at, in the first several sentences, "It is agreed and understood that work to be performed by the heavy and highway construction carpenters, pile drivers, such as driving and pulling of all types of wood, steel and concrete piles and sheet piling" -- that's basically a description of the work that secant would be involved.
Q. Okay. Could you turn to Page 3 of Exhibit 5, Jurisdictional Procedure.
A. Correct.
Q. Are you familiar with that provision?
A. Yes, I am.
Q. Would you characterize the dispute or the issue that Local 94 had with Trevi Icos over employment of carpenters or laborers a jurisdictional dispute as that term is used in Article 4 on Page 3?
A. It could be.
Q. When you say "it could be," why do you qualify your answer?



A. Well, I think you can look at it as a jurisdictional dispute, but I think you can also look at it as a -- as a misassignment of work. In the conversations with Trevi Icos, Trevi Icos was more inclined to use its jurisdictional practices from the great State of Massachusetts which is somewhat different than the jurisdictional procedures down here in Rhode Island.
So where he may have thought that that work was the work of another trade in Rhode Island, it doesn't seem to work that way. And those jurisdictional practices do change from area to area, sometimes even within a state. In Massachusetts, there are probably 19 locals, so the jurisdictional practices within those 19 locals could be somewhat different. In Rhode Island, it is the same in the 39 cities and towns.
Q. Is a dispute between a union and an employer over whether the union's people have a right to a particular job a jurisdictional dispute within the meaning of Article 4 of this Exhibit 5?
A. I guess it could be, yeah.
Q. Under what circumstances would it not be a



jurisdictional dispute?
A. It would not be a jurisdictional dispute if Trevi did not have an agreement with us. Then it would be a subcontracting violation.
Q. In this case Trevi did have a contract, correct?
A. Trevi had an agreement with both carpenters and laborers, correct.
Q. And the question at hand was whether the work that was involved fell under the carpenters' CBA or the laborers' CBA?
A. Right.
Q. So isn't that a jurisdictional dispute within the meaning of Article 4?
A. Yes.
Q. Does Article 4 provide that if there isn't a jurisdictional dispute the employer and the union should meet to try to resolve the dispute?
A. Let's see. I mean, that is one way it could get settled.
Q. Paragraph -- the second paragraph of Article 4 says, quote, "if unanimous agreement is not reached at the meeting, the union shall request that its international union assign a representative who shall make arrangements to meet representatives of the other international



union or unions involved and representatives of the employer to seek settlement of the dispute," closed quote.
You're familiar with that part --
A. Yes, I am.
Q. -- of the CBA?
A. Yes, I am.
Q. Did Local 94 request that Carpenters International Union assign a representative --
A. No.
Q. -- as called for?
A. No, it did not.
Q. Why not?
A. Like I said, Bill Holmes didn't pursue it that way.
Q. In the interrogatory answers that we've looked at before --
MR. GURSKY: Interrogatory answers, Ted?
MR. PRENTISS: Give me a second. I'll find it, the one I want. Show you Exhibit 10 which is interrogatory answers of the pension fund, Interrogatory Number 8 which asks for identification of specific provisions of the declaration of trust and the CBA that you rely on and the answer with respect to the CBA says

Article 12, Sections 3, 4 and 5.
MR. GURSKY: Can I have a minute, please?
MR. PRENTISS: Yes.
MR. GURSKY: This is in response to an interrogatory asking what sections relate to the submission of timely payroll reports of contributions, promptly pay contributions and pay penalties and interest.
MR. PRENTISS: Uh-huh.
Q. This interrogatory refers to Sections 3, 4 and 5 of Article 12. Would you agree with me that that must be referring to Exhibit 5 as opposed to Exhibit 6?
A. Yes.
Q. The supplemental answer, which is Exhibit 11, also identifies Article 10 of the CBA with the AGC?
A. AGC, Article 10. Article 10, what section? Article 10 in its entirety, I guess, because it doesn't have any sections to the answer anyway. Right?
Q. So understanding those to be the answers, that it's Article 10 of Exhibit 6, Article 12 of Exhibit 5 that the plaintiffs rely on as the



basis for the claim that there was a reporting in the contribution requirement?
MR. GURSKY: Well, I'm going to object to the question because you asked about -- in the interrogatory about the trust and the CBA and you've selected the reference in the answer to the agreement but not the trust.
MR. PRENTISS: We'll get to that, but --
MR. GURSKY: Okay. But I -- it's not entirely what the interrogatory asks for.
Q. With that clarification, Mr. Palmisciano, I want you to understand what the purpose of my questions is so that you're not -- I'm not trying to trick you here.
Do you understand that my interrogatories were asking you to identify the specific provisions in any and all agreements that you rely on as saying Trevi Icos was required to do what you claim it was required to do in this lawsuit?
MR. GURSKY: Well, I'm going to object. He's not the person who answered the interrogatories. He's now here as the designated person to respond to questions relating to the answers.



MR. PRENTISS: Correct.
MR. GURSKY: He didn't answer that interrogatory. And moreover, respectfully, Dan, the interrogatory doesn't ask that question. It asks specifically for the provisions, paragraph or clause of the agreement and declaration of trust and the CBA identified in Interrogatory 6 above and any other agreement or document alleging that there's an obligation to submit reports and so forth and so on --
MR. PRENTISS: Yes.
MR. GURSKY: -- as alleged in Paragraph 12.
MR. PRENTISS: All right.
Q. With that clarification from your counsel, do you understand that that question was asking you to identify specific provisions of the contracts?
MR. GURSKY: Excuse me. It wasn't asking him to do anything. It was a response to the funds.
MR. PRENTISS: Your objection is noted.
MR. GURSKY: It's an interrogatory to the fund.
MR. PRENTISS: Your objection is noted.
MR. GURSKY: Well, I'm instructing him



not to answer that question. It's obviously argumentative. The interrogatory that was directed was directed to a party. It wasn't directed to Mr. Palmisciano. He's here to answer questions relating to the answers. It wasn't directed to him at all.
MR. PRENTISS: He is here designated by the funds to provide the answers to these interrogatories. We'll leave it at that. I'm not going to spread on-the-record argument. The argument can be addressed to the judge.
MR. GURSKY: That's fine.
Q. What do you understand that interrogatory to have been requesting of, in this case, the pension fund, Interrogatory Number 8?
MR. GURSKY: Can I have that back again, please.
(The question was read.)
MR. GURSKY: Objection, form.
A. From reading the Question Number 8, again, I mean, it starts to reference a specific question or the start of a question, and then it goes back to 6 and 6 asks to identify the agreement declaration of trust referred to in 11 of the complaint, the Collective Bargaining Agreement,

singular rather than plural. Herein, the CBA referred to in Paragraph 13 of the complaint. I mean, you know, at this point I think we rely on both agreements.
Q. Okay.
A. That's my answer.
Q. Now, I want you to identify the specific provisions, paragraphs, sentences, of the agreements, any agreements that you rely on for saying that Trevi Icos had an obligation to make reports and contributions which it didn't do. And you can refer to your interrogatory answers or your funds' interrogatory answers if you want or not.
A. Do you want to start with the specific agreement?
Q. We'll start wherever you'd like to start.
A. In the Exhibit 5, which is the construction industry's agreement, it starts off in Section 1, "the employee agrees to contribute," and it starts -- in the second sentence, it starts to name the funds that it agrees to contribute. "The stamp plan shall be mandatory and all carpenter employees shall participate," which to me is an obligation to pay benefits on hours



worked.
In Section 2, it further goes and describes the funds -- specific funds for which contributions are required.
In Section 3, it requires the contractor to file a monthly remittence report, fringe benefits purchased, and that report has to be in by the 20th of the month.
Number 4, violation of the agreement, it says, "failure to contribute to these funds shall be a violation of this agreement." It says, "the employer mutually recognizes the requirements that contributions to these funds be made on a current basis by all employers." In Section 6, it talks about benefits. "The funds shall be used to provide benefits as determined by the trustees in accordance with the terms of the trust agreement." I think that's it on that one.
Q. Could you turn back to Section 1 of Article 12?
A. Section 1 of Article 12?
Q. Yeah, it's on Page 12.
The first sentence which says, quote, "the employer agrees to continue in effect a stamp plan" --
A. Yes.



Q. -- "so forth, to be tendered to all carpenters and apprentices with their payroll checks," closed quote. Do you see that sentence?
A. Yes, I do.
Q. What is the meaning of "carpenters and apprentices" in that sentence?
A. I believe earlier in the agreement you'll find an explanation that the term "carpenter" and "apprentice" would be synonymous with pile driver, diver and some of the other specific -- I mean, we're all carpenters. We all belong to the carpenters union, so I believe that the term "carpenter" is synonymous with pile driver if that's the direction you're going in.
Q. I'm just asking if you have any particular reference within this agreement as to what the term "carpenters and apprentices" means or how it is defined?
A. I think if you go to Section 1 on Page 2 in Article 2, it is agreed and understood that work to be performed by the heavy and highway construction carpenters, pile drivers, divers and tenders such as driving and pulling, and it goes on and continues to describe.
Q. So does carpenter and apprentice mean members of



the union?
A. Correct. If you look at Section 3, there's the better description. "When the term carpenter, pile driver, welder, dock builder, diver or diver tender is used in this agreement, it shall be synonymous."
Q. Does the pension fund -- the funds, the plaintiff funds, then, rely on this sentence in Section 1 of Article 12 --
A. Same -- same --
MR. GURSKY: Excuse me. I don't think the question was done yet.
MR. PRENTISS: Not yet, yeah.
THE WITNESS: I'm sorry.
Q. Do the pension funds rely on the first sentence of Section 1 of Article 12 of Exhibit 5 insofar as Exhibit 5 is the applicable contract? And I'll ask you the same question on Exhibit 6, okay, so we don't have that -- I'm not trying to trap you into one contract or the other.
A. All right.
Q. So just focusing --
MR. GURSKY: Glad we straightened that up.
Q. So just focusing on Exhibit 5 --

A. Okay.
Q. -- do the funds rely on the first sentence of Section 1 of Article 12 for its belief that Trevi Icos is obligated to prepare the reports and make the contributions for which the funds have sued Trevi Icos, in this case?
A. I believe there are a number of sections, but I believe that this is -- and this would be one of them, yes.
Q. The reason I asked you the question the way I did, you read to me other sections within Article 12 that talk about violation of the agreements, that's Section 4.
A. Okay.
Q. Section 5, audit; Section 6, benefits, and so forth. I'm focusing just on the requirement to report and contribute, not the ability to sue for failure to do that. Do you understand the distinction here in my question?
MR. GURSKY: I don't. I'm going to object on the basis of the form.
THE WITNESS: I'm having a little problem following myself.
Q. Okay. I want you to focus just on this issue. What part of this Collective Bargaining



Agreement, Exhibit 5, is it that you say required Trevi Icos to make reports and make contributions for the work in question in this lawsuit? And I'll ask you if it specifically is the first sentence in Section 1 of Article 12, and I'll refer you also to Section 3, remittance due date.
A. Okay.
MR. GURSKY: Excuse me.
Q. Do those two sections constitute what you believe to be the contract basis within article -- or Exhibit 5 for what you claim Trevi Icos should have done?
MR. GURSKY: Objection, form. Go ahead.
A. I believe that the entire paragraph in Section 1 --
Q. Okay.
A. -- but looking at the bottom, okay, looking at the last two sentences -- I mean, the whole thing is applicable, in my view, but most importantly "the stamp plan shall be mandatory and all carpenter employees" -- and we know the word carpenter is now pile driver -- "employees shall participate. No wages shall be paid in lieu of benefits."
So specifically we're saying that those



benefits need to be paid on all the employees whether they're considered to be carpenters or pile drivers.
If we look -- if we continue to look down in this Section 1, it tells you how the stamps are purchased at the First Trade Union Bank as of '99. It also talks about deductions on the top of Page 13, which is still in Section 1, "the employer's sole obligation under the term of this agreement shall be to make deductions from the employee's net wages and to deliver stamps to said carpenter/pile driver employees for work performed."
So, again, we're talking about pile drivers, work performed, and we're also talking about the deductions, dues checkoff, vacation. A dues checkoff is a benefit that's included in the stamp but is actually deducted out of the employee's net pay.
Q. Now, in your answer you used a new term that we haven't talked about before, "employee"?
A. Uh-huh.
Q. What's an employee within the meaning of this Article 12, Section 1, as you've defined it?
A. In this agreement?



Q. Yes.
A. I would think that the employee would refer to a carpenter, apprentice, pile driver, anyone on that first page, the synonymous description, diver, diver tender.
Q. So for purposes of Exhibit 5, this CBA, the terms "carpenter" and "apprentice" and "pile driver" and "employee" are all the same?
A. No, because Trevi Icos could have other employees who were not members of the carpenters union.
Q. So understanding that, I'm trying to -- you've used the word "employee" as what you say Trevi Icos had an obligation to do. Is employee within the meaning of this agreement a carpenter as you've previously defined that term?
MR. GURSKY: Excuse me. Could I have that back again, please.
(The question was read.)
MR. GURSKY: I object to the form of the question. Go ahead.
A. Would be a carpenter employee I guess is the best way to answer it.
Q. And tell me again, what is a carpenter employee?
A. As defined in the Collective Bargaining

Agreement?
Q. Yes.
A. A carpenter employee would be somebody who's doing covered work as described in this agreement.
Q. A member of Local 94?
A. Yes.
Q. Could you turn now to Exhibit 6, which is the other CBA, and turn to Article 10. And I'd like to ask you to compare Article 10 of Exhibit 6 to Article 12 of Exhibit 5 and tell me whether they are for all of -- the purpose of all of the questions I've put to you here, the same, so I don't have to ask you the same series of questions about Exhibit 6 that I asked you about Exhibit 5.
A. There's one, one difference.
Q. What's the difference?
A. Section 5, interest, is not in the construction industry's, but it is in the AGC agreement, yes.
Q. Are the two sections that we were just focusing in on a minute ago, Sections 1, 2 and 3, the same in Exhibit 6 as Exhibit 5?
A. 1, 2 and 3?



Q. Yes.
MR. GURSKY: Can I have the question back.
(The question was read.)
MR. PRENTISS: I should change that question to the three sections.
MR. GURSKY: That's what was haunting me about that question. I knew something was haunting to me. Are those three sections the same is your question?
MR. PRENTISS: Correct.
A. I believe they're intended the same. There's a different verbiage in this paragraph, which one agreement says -- why don't I give you the agreement. In 5 -- in Exhibit 5's agreement, there is a paragraph in Section 1 that says an employer at its discretion when working outside of the territorial area is different than the section in 6 which I believe is the same but is written differently.
Q. But do you believe that in terms of the substance that's applicable to this lawsuit, the two agreements are essentially the same?
A. Yes.
Q. Thank you.



These sections, Article 12 of Exhibit 5, Article 10 of Exhibit 6, in their Section 2 -- Sections 2 refer to agreements and declarations of trust, correct?
A. Correct.
MR. PRENTISS: I'm going to mark now four exhibits and ask you whether you can identify these as being four of the documents referred to in Sections 2 of Exhibits 5 and 6, so we'll go that one next.
(Defendant's Exhibits 14 through 17 were so marked.)
(A recess was taken.)
Q. I'm going to go through these, Mr. Palmisciano. Why don't we start with 14. Is this the agreement and declaration of trust for the pension fund which is identified and referred to in Section 2 of Article 10 and Article 12 of the Collective Bargaining Agreements?
A. I believe it is, yes.
Q. All right. Exhibit 15, is that the agreement and declaration of trust for the annuity fund that's referred to in the CBA -- CBAs?
A. I believe it is, yes.
Q. Exhibit 16, we identify that as being the



agreement and declaration of trust of the health fund referred to in the CBAs?
A. Yes.
Q. And finally, Exhibit 16 we identify as being the agreement and declaration of trust for the vacation fund referred to in the CBAs?
A. Yes.
Q. Thank you. Now, let's look first at 14, the pension trust fund agreement. The first several pages of Exhibit 14 constitute the Amendment Number 1 to the agreement effective January 1, 1976.
A. Okay.
Q. And will you agree with me that we have Pages 1 through 18 of that amendment?
A. Okay.
Q. And it appears that Page 18 is not the last page of the amendment. Do you agree with that? In other words, Page 18 ends with an incomplete sentence?
A. Correct.
Q. Do you have any knowledge where the remaining page or pages of this amendment are?
A. No, I do not.
Q. In the pension funds answers to interrogatories,

which is Exhibit 10, answer to Interrogatory Number 8 refers specifically to Article 6.12 of the trust agreement.
A. Okay.
Q. It doesn't appear that we have all of 6.12 in Exhibit 14, right?
A. Are you going back to that C on Page 18?
Q. Right.
A. I believe it to be -- you know, looks like an incomplete sentence and I don't know how much more that should be added to it. I would agree that it is an incomplete sentence.
Q. And it appears to be, therefore, an incomplete Section 6.12, right?
A. Possibly, yes. I would have to say yes.
Q. Okay.
A. Even if it's only a word.
MR. PRENTISS: Thanks. Turn to Page 17 there of that amendment.
(Witness complied.)
Q. Is this the provision that the pension fund relies on as authorizing this lawsuit on behalf of the fund?
MR. GURSKY: Excuse me. I'm going to object to the form of the question.



A. I believe it is, yes.
THE WITNESS: Are you looking for this one?
MR. PRENTISS: Can you mark this as our next number.
(Defendant's Exhibit 18 was so marked.)
Q. Showing you 18, do you recognize that as the minutes or a portion of the minutes of the meeting of the trustees of the pension fund of October 21, 2003?
A. Yes.
Q. Okay. Now, staying with the pension fund, the pension funds answers to interrogatories at Answer Number 3 identifies the fiduciaries and administrators of the pension fund, and the fiduciaries are identified as William Holmes, David Palmisciano, Thomas Savoie, Palmisciano Lander, David Rampone, Shawn McMullen, David Maron, Thomas Purcell. Do you see that?
A. Yes.
Q. Is that an accurate statement of who the trustees are of the pension fund as of the date of this interrogatory answer?
A. What was the date?
Q. Pardon me?



A. What was the date?
Q. I'll show you in the back.
A. October?
Q. October 2005.
A. Yes.
Q. Is that still accurate?
A. Yes.
MR. GURSKY: "That" being? Which that?
MR. PRENTISS: Those -- the answer that I just read naming trustees of the pension fund.
A. Yes.
Q. So there are eight trustees of the pension fund?
A. Yes.
MR. PRENTISS: In Exhibit 14, which is the agreement and declaration of trust, could you turn to Page 4 of the actual agreement. It's past the amendments, the amendment that we talked about before.
THE WITNESS: This or --
MR. PRENTISS: Keep going. Page 4.
THE WITNESS: In the second set of four?
MR. PRENTISS: Yes. Correct.
THE WITNESS: Okay.
Q. Will you agree with me that according to the agreement and declaration, quote, "there shall be



not more than six trustees of this trust"?
A. Yes.
Q. How did it come about that eight trustees were appointed?
A. The Board was expanded.
Q. By -- is there an amendment to the agreement and declaration to that effect?
A. There should be.
MR. GURSKY: Excuse me. Off the record, please.
(Off the record.)
Q. I'll ask you the same question with respect to the other funds. I'll just represent to you that it appears that the other funds also have provision for no more than six trustees and I haven't seen any amendments or anything that has changed that. Do you know how it came about that you ended up with eight?
A. My recollection is that sometime around 2000, '99 or 2000, the Board was expanded by one management trustee and one union trustee.
Q. To your recollection, was there any other change to the agreements associated with that expansion of the board of trustees?
A. In what way?

Q. For example, the definition of a quorum or the voting requirements for passage of a resolution.
A. I remember there being a discussion. I'm not 100 percent sure how it was -- but we did have discussion with the quorum requirements and also -- the Board was expanded primarily -- my memory is that management was having a hard time getting a quorum. So the Board was expanded to ensure that there weren't matters that were held on the table for a month because there wasn't a quorum.
Q. In the normal practice of the administration of the different funds, who is it who is responsible for preparation of an amendment to the trust agreement and recording it?
A. I believe it was -- and, again, I'm trying to remember -- I'm trying to remember dates. Valerie Campana's father was the administrator of the fund. And if it was under his watch, then it would probably have been him who prepared the amendments and had legal counsel review those amendments.
After Phil passed away, which was kind of sudden, Valerie and Don Lavin took over as co-administrators and under their watch it would



be them with legal counsel, but more legal counsel than it was under Phil.
Q. Is there a particular file location within the offices where the trust agreements and amendments to the trust agreements are maintained?
A. There should be, yes.
Q. Actually, let me ask you a question related to that: Where are the offices of the four funds that are the plaintiffs in this lawsuit?
A. They're at 14 Jefferson Park Road, Warwick, Rhode Island 02888. And we also have Valerie Campana's office where some documents are kept which is in, say, Cranston, Rhode Island. It's in the -- I can't remember the name of the -- Garden City area of Cranston, Rhode Island. I don't know the exact address. I don't have that off the top of my head.
Q. The first address, the Warwick address, is that the address of Local 94?
A. Yes.
Q. The administrative employees that you've identified, Donald Lavin, Valerie, are they employed by Local 94?
A. No.
Q. They are employed by what entity?



A. Phil Campana, Valerie's dad, had a company called Benefits Unlimited or Benefit Funds Unlimited which he administered to several different labor organizations. That fund -- Valerie and Don, to the best of my knowledge, are employees of that particular entity as well as the people who work in the fund's office at the 14 Jefferson Park address.
Q. How many employees are there in all, to your knowledge? Who are in that category that you've described of Valerie Campana and Donald Lavin?
A. Well, you would have to -- Valerie Campana and Dan Lavin administer to several other funds. There are three people who are dedicated to carpenters funds, the three women who work in the physical building on Jefferson Park Road. There are several other people who work for Valerie at the Cranston address who work on carpenters funds but are not -- they're Valerie's employees and they administer other funds also. So I don't know what the break up is, but there's a portion of the time that's dedicated towards our funds.
Q. So did the funds enter into some kind of a contract with this Benefits Unlimited?
A. Correct. The funds have a contract with



Benefits. Benefits Unlimited, I believe, is the name of the company.
Q. So Benefits Unlimited is an outside third-party consultant?
A. Third-party administrator, yes.
Q. That provides administrative services for the Local 94 funds as well as funds of other labor organizations?
A. Yes.
Q. And then Benefits Unlimited has three employees who are on-site with Local 94; is that true?
A. Correct.
Q. And Donald and Valerie, who are more senior executives at Benefits Unlimited, are central employees of Benefits Unlimited who do some work for Local 94 as well as work for other similar funds? Do I have that right --
A. Correct.
Q. -- generally?
Is an employer such as Trevi Icos bound to the terms of the agreement and declaration of trust for the pension fund, for example, which is Exhibit 14 through the CBAs?
A. I believe so, yes.
Q. Do the terms and provisions of the pension trust

agreement apply through the CBA to Trevi Icos?
A. I believe so, yes.
Q. So do the CBAs incorporate the terms and provisions of the trust agreements such as Exhibit 14?
MR. GURSKY: Object to the form of the question. Go ahead.
A. I believe in each agreement in Exhibits 5 and 6 there are references to the trust agreements which obligate those contractors to comply with the provisions of the trust agreements.
Q. Do the definitions of terms contained within the trust agreements apply through the CBAs to employers such as Trevi Icos?
MR. GURSKY: Objection, form.
A. I believe so, yes.
MR. PRENTISS: This a good breaking point for me.
MR. GURSKY: Then this is a good one for me.
MR. PRENTISS: Do you want to talk to, David, now about -- if you want to look at calendars now about what's convenient to --
MR. GURSKY: I don't have mine, but let's try and wrap yours up.



MR. PRENTISS: You know, maybe another hour, I think, realistically is all.
MR. GURSKY: So we can set another 10 o'clock?
MR. PRENTISS: Sure. Whatever's good for you.
MR. GURSKY: Do you want to try and do it now?
MR. PRENTISS: Yeah.
(Off the record.)
THE REPORTER: Would you like a copy?
MR. GURSKY: Yes, please.
(Deposition adjourned at 11:58 a.m.)
* * * * * *

C E R T I F I C A T E

I, Devin J. Baccari, a Certified Shorthand Reporter and Notary Public within and for the State of Rhode Island, do hereby certify that I am expressly approved as a person qualified and authorized to take depositions pursuant to the Rules of Civil Procedure of this Court, especially, but without restriction thereto, under Rule 30 of said Rules; that the witness was first sworn by me; that the foregoing 68 pages contain a true recording of the proceedings.

I further certify that the exhibits were retained by Mr. Prentiss.

I further certify that I am not counsel, attorney or relative of either party or clerk or stenographer of either party, or of the attorney of either party, or otherwise interested in the event of this suit.

I further certify that neither the deponent nor any party requested a review of the transcript.

IN WITNESS WHEREOF, I hereunto set my hand this 5th day of February, 2006.

Devin J. Baccari CSR Notary Public

DEVIN J. BACCARI, CSR, NOTARY PUBLIC
My Commission Expires 8/17/06

DATE: FEBRUARY 2, 2006
IN RE: RI CARPENTERS ANNUITY FUND vs. TREVI ICOS CORPORATION
WITNESS NAME: DAVID F. PALMISCIANO

Word Index

A
**ability** 50:17
**able** 31:10 34:5,8
**above-entitled** 1:11
**abundant** 12:22
**accept** 4:6
**accord** 35:1
**accurate** 30:6 59:21 60:6
**acknowledged** 8:13
**actual** 60:16
**added** 58:11
**address** 9:11 63:16 63:18,18,19 64:8 64:18
**addressed** 5:15 45:11
**adjourned** 67:13
**administer** 64:13,20
**administered** 64:3
**administration** 62:12
**administrative** 10:7 10:24 63:21 65:6
**administrator** 62:18 65:5
**administrators** 59:15
**affiliate** 6:25
**affirmative** 24:18
**AGC** 2:12 12:9,11 15:12 17:13 42:18 42:19 54:20
**agenda** 2:18 22:15 23:2,6,22,25 24:3 24:11,19,21 25:1,5 25:9,10,12,15,24 26:4,9
**agendas** 24:22 25:11
**agent** 15:8
**agents** 15:6 31:4
**ago** 34:3 54:23
**agree** 29:3 42:12 57:14.18 58:11 60:24
**agreed** 38:6 48:20
**agreement** 2:11,12 2:19,20,21,22 6:15 6:16,18 7:8,10,10 7:21 8:13,18,21 12:11 13:12 14:22 15:23,25 17:9,13 18:2,6,9,21 20:8 20:12,14 21:5,6,10 29:18 33:10 34:24 35:3,4 40:3,6,21 43:7 44:6,8 45:23 45:25 46:16,19 47:9,11,18 48:7,16 49:5 51:1 52:10,25 53:15 54:1,5,21 55:14,15,15 56:16 56:21 57:1,5,9,11 58:3 60:15,16,25 61:6 62:15 65:21 66:1,8
**agreements** 6:19,22 7:17,19 8:11,14 12:7,8 13:14,22 17:25 18:12,16 20:8 21:12 43:17 46:4,9,9 50:12 55:23 56:3,19 61:23 63:4,5 66:4 66:9,11,13
**agrees** 46:20,22 47:23
**ahead** 5:11 14:13 51:13 53:21 66:7
**allegations** 17:10
**alleged** 44:12
**alleging** 44:9
**ALLIED** 1:23
**amendment** 57:10 57:15,18,23 58:19 60:17 61:6 62:14
**amendments** 60:17 61:16 62:21,22 63:4
**amount** 12:22 18:8
**ancillary** 33:19
**annuity** 1:4 2:20 5:21 11:10,20,23 17:4 56:22 68:20
**answer** 4:7,14 6:1 7:20 13:17 17:3,11 18:4 19:11,13 21:24 27:25 28:4 28:23 38:25 41:25 42:16,21 43:6 44:2 45:1,4 46:6 52:20 53:23 58:1 59:14 59:23 60:9
**answered** 43:22
**answering** 4:16
**answers** 2:13,14,15 2:16,17 15:16 16:8 16:12,19,20,23,24 16:25 34:3 41:16 41:18,21 42:23 43:25 45:5,8 46:12 46:13 57:25 59:13
**anyway** 42:21
**apart** 30:11
**apparent** 6:10
**appear** 58:5
**appearing** 3:19 4:22
**appears** 57:17 58:13 61:14
**applicable** 12:19 15:13 20:9 21:7,25 49:17 51:19 55:22
**applies** 12:17 13:22 14:6
**apply** 13:14 66:1,13
**appointed** 11:17,19 61:4
**apprentice** 48:9,25 53:3,7
**apprentices** 48:2,6 48:17
**approved** 68:4
**approximately** 3:13 11:20 30:11
**arbitrations** 3:17
**area** 8:23 14:15 39:13,14 55:18 63:15
**areas** 34:14
**argument** 45:10,11
**argumentative** 45:2
**arrangements** 40:24
**article** 17:12,13 38:21 39:23 40:13 40:15,20 42:1,12 42:17,19,19,20,24 42:24 47:19,20 48:20 49:9,16 50:3 50:11 51:5,10 52:24 54:9,10,11 56:1,2,18,18 58:2
**asked** 23:1,6 36:1 38:5 43:4 50:10 54:15
**asking** 18:24 22:23 23:17,23 33:4 42:6 43:16 44:16,19 48:15
**asks** 17:6 41:22 43:10 44:5 45:23
**aspects** 28:9
**assert** 27:11 33:5 34:20
**assign** 40:23 41:9
**assignment** 30:16
**associated** 13:1 18:19 61:23
**ASSOCIATES** 1:17
**assume** 4:15
**assuming** 26:4
**assumption** 29:10
**attention** 22:8 23:19
**attorney** 68:9,10
**attorneys** 6:3
**audit** 50:15
**authorized** 68:4
**authorizing** 58:22
**Avenue** 1:23 9:12
**award** 35:8
**awarded** 31:9 35:2
**awards** 35:6
**aware** 3:19 4:2,25 34:14
**a.m** 1:14 3:1 67:13

B
**B** 2:6
**Baccari** 1:12 68:2,17
**back** 33:9 37:10,10 45:16,22 47:19 53:18 55:3 58:7 60:2
**background** 26:1 27:8
**Bank** 52:6
**bargaining** 2:11,12 6:14,15,18 8:10,18 8:21 12:6,7 17:12 17:25 18:2 34:24 45:25 50:25 53:25 56:19
**base** 20:7
**basic** 33:9
**basically** 38:11
**basis** 15:5 20:2 43:1 47:14 50:21 51:10
**beam** 30:13,19
**beams** 30:20,21,22 30:24
**becoming** 20:5
**beginning** 27:3
**behalf** 1:12 19:11 22:16 58:22
**belabor** 19:9
**belief** 15:17 50:3
**believe** 6:5,20 7:7,14 8:4 9:11 10:23 11:16,19 13:24 16:14 20:13 21:24 22:13,16 23:4 25:8 25:10,21 26:2,5 31:1,23 34:12,21 34:24 35:14,15 37:25 48:7,12 50:7 50:8 51:9,14 55:12 55:19,21 56:20,24 58:9 59:1 62:16 65:1,24 66:2,8,16
**belong** 9:16 48:11
**benefit** 18:13 22:24 52:17 64:2
**benefits** 26:24 46:25 47:6,15,16 50:15 51:24 52:1 64:2,24 65:1,1,3,10,14,15
**best** 15:2 22:19 25:14 26:19 27:10 29:16 30:15 31:2 32:21 36:20 53:23 64:5
**better** 6:16 49:3
**Betty** 24:23
**Bill** 10:14 25:22 26:10 27:16 36:1 36:24 41:14
**bit** 5:12 7:23,24 28:25
**board** 61:5,20,24 62:6,8
**boards** 29:21 30:2 30:13,19
**bottom** 51:17
**bound** 8:14 19:2,22 65:20
**break** 64:21
**breaking** 66:17
**breeze** 5:11
**bridges** 12:24
**bringing** 21:21 22:7 23:20
**brought** 3:22 19:23 23:18 32:14,16
**builder** 49:4
**builder-type** 12:23
**building** 9:5 13:3,12 15:23 18:17 20:11 20:12 21:4 64:16
**buildings** 14:18 18:11,18
**bunch** 36:6
**business** 3:11,14 10:6,8,11,13,14,16 10:19

C
**C** 58:7 68:1,1
**calendars** 66:23
**call** 29:19 33:18
**called** 7:13,16 41:11 64:2
**Campana** 24:24 25:12 64:1,11,12
**Campana's** 62:18 63:12

**capacity** 1:6
**carpenter** 33:14 46:24 48:8,13,25 49:4 51:21,22 53:3 53:7,15,22,24 54:3
**carpenters** 1:4,4,5,5 3:9 7:1 8:1,3,7,25 9:3,14 10:22 11:9 11:11,12 20:6 22:22,25 27:2,24 33:6 34:1 37:9 38:8,20 40:6,9 41:8 48:1,5,11,12 48:17,22 52:2 53:10 64:15,18 68:20
**carpenter/pile** 52:12
**case** 4:25 7:12 14:23 14:23 16:9 19:1,7 23:20 27:3 40:5 45:14 50:6
**categorize** 20:25
**category** 64:10
**cause** 1:11
**CBA** 17:10,12,13 40:9,10 41:6,24,25 42:17 43:5 44:7 46:1 53:6 54:9 56:23 66:1
**CBAs** 17:20 37:15 56:23 57:2,6 65:23 66:3,13
**central** 65:14
**certain** 3:22
**Certified** 68:2
**certify** 68:3,7,9,12
**chain** 9:7,10
**chairman** 11:9,22 24:14,25
**change** 39:13 55:5 61:22
**changed** 61:17
**characterize** 20:23 38:18
**charge** 3:15 37:11
**chasing** 35:7
**checkoff** 52:16,17
**checks** 48:2
**chief** 10:7,24
**circumstances** 26:17 26:20 39:25
**cities** 9:20 39:18
**City** 63:15
**Civil** 68:4
**claim** 20:19 43:1,19 51:11
**claimed** 34:18
**claiming** 33:15
**clarification** 43:11 44:15
**clarify** 4:12
**clause** 17:8 44:6
**clear** 23:10
**clearly** 18:10
**clerk** 68:9
**closed** 41:3 48:3
**collective** 2:11,12 6:14,15,18 8:10,17 8:20 12:6,7 17:12 17:25 18:2 34:24 45:25 50:25 53:25 56:19
**combined** 22:9
**come** 6:13 16:18 22:8 25:13,15 33:19 61:3
**comes** 14:14
**coming** 15:18 31:4
**command** 9:7,10
**COMMENCED** 3:1
**Commission** 68:18
**company** 7:8,11,13 7:16 64:1 65:2
**compare** 54:10
**complaint** 2:18 17:11 22:3 45:25 46:2
**completed** 23:3
**complied** 5:17 58:20
**comply** 8:20 66:10
**concrete** 31:14 38:10
**confined** 9:17
**confines** 9:21
**conjunction** 33:12
**Connecticut** 10:11 10:18 11:5,6
**connecting** 31:15
**connection** 33:24
**consider** 14:19
**considered** 13:4,5 26:23 52:2
**consists** 30:18
**constitute** 51:9 57:10
**Constitution** 9:11
**construction** 12:9,13 12:18 13:4 14:2,21 15:12,25 17:14 18:3,20 20:14 21:3 38:8 46:18 48:22 54:20
**consultant** 65:4
**contain** 68:6
**contained** 66:12
**continue** 47:23 52:4
**continues** 48:24
**contract** 3:17 15:12 15:13 19:2,22 21:11,21 40:5 49:17,20 51:10 64:24,25
**contractor** 8:13 14:7 15:22 20:7 34:22 35:1,3 36:17,18 47:5
**contractors** 12:21 12:21,23,25 13:2 14:6 66:10
**contractor's** 37:9
**contracts** 17:24 21:25 44:17
**contribute** 46:20,22 47:10 50:17
**contribution** 43:2
**contributions** 20:21 42:8,8 46:11 47:4 47:13 50:5 51:2
**convenient** 66:23
**conversation** 37:4
**conversations** 27:21 34:22 35:14 36:24 39:4
**convince** 35:7,13
**copy** 67:11
**CORPORATION** 1:8 68:20
**correct** 3:21 4:4 8:16 8:24 9:22,25 11:1 15:19 17:22 23:9 24:16 27:17 29:9 32:17,18,20 34:2,7 38:15 40:5,7 44:1 49:2 55:11 56:4,5 57:21 60:22 64:25 65:12,18
**correctly** 36:12
**council** 3:9,23 7:1 8:1,5,5,7,9,19 9:8 9:24 10:1,17,20,22 10:25 20:6 27:2
**counsel** 44:15 62:21 63:1,2 68:9
**couple** 34:3
**course** 34:13
**Court** 1:1,23 68:5
**covered** 26:23 37:12 54:4
**covers** 10:1
**Co-Administrator** 1:6
**co-administrators** 62:25
**co-Chair** 11:10
**Cranston** 1:24 63:13 63:15 64:18
**CSR** 1:12 68:17
**current** 47:14
**C.A** 1:7

**D**

**D** 2:1
**dad** 64:1
**dams** 12:24
**Dan** 44:3 64:13
**DANIEL** 1:20
**date** 25:16,20 51:6 59:22,24 60:1 68:19
**dates** 62:17
**David** 1:11 2:3 3:2,6 59:17,18,18 66:22 68:21
**day** 6:4 36:4 68:13
**days** 36:4
**day-to-day** 3:15
**decide** 24:25
**decided** 35:19
**decisions** 25:4
**declaration** 2:19,20 2:21,22 17:9 41:24 44:6 45:24 56:16 56:22 57:1,5 60:15 60:25 61:7 65:21
**declarations** 56:3
**declined** 28:8
**dedicated** 64:14,22
**deducted** 52:18
**deductions** 52:7,10 52:16
**deeming** 14:3
**defendant** 1:12,19 7:11
**Defendant's** 2:8 5:6 12:2 16:5 22:2 24:6 56:11 59:6
**define** 37:22
**defined** 48:18 52:24 53:16,25
**defining** 38:2
**definition** 21:3 62:1
**definitions** 66:12
**deliver** 52:11
**depending** 18:10 21:7
**deponent** 19:7 68:12
**deposes** 3:3
**deposition** 1:11 2:9 2:9,10,10 3:1,20 3:25 4:24 5:3,24 6:5,6 19:12,14,19 19:20 67:13
**depositions** 68:4
**describe** 12:16 48:24
**described** 54:4 64:11
**describes** 47:2
**describing** 18:22
**description** 2:7 33:9 37:19 38:11 49:3 53:4
**descriptive** 15:24 18:7,7
**design** 36:6
**designated** 4:22 5:20 16:18 19:10,19 43:23 45:7
**determination** 14:5 14:11
**determined** 47:16
**Devin** 1:12 68:2,17
**dictates** 9:7,8,9
**difference** 18:14 54:17,18
**different** 5:15 17:20 28:12 31:5 36:16 39:7,17 55:13,18 62:13 64:4
**differently** 55:20
**digging** 30:14
**directed** 45:3,3,4,6
**direction** 48:14
**disagreed** 29:8
**disagreement** 29:11 29:13,16
**discovery** 24:10
**discretion** 55:17
**discuss** 16:24 23:20
**discussed** 15:1,1 16:15,22 22:9
**discussing** 17:24
**discussion** 15:7,10 16:1 25:21 26:12 26:16 27:4,7 62:3 62:5
**discussions** 34:25
**dispute** 31:10,23 32:1,8 34:4,5 38:18,21 39:2,20 39:22 40:1,2,12,16 40:17 41:2
**distinction** 50:19
**district** 1:1,1 10:10 10:16
**diver** 48:10 49:5,5 53:5,5

**divers** 48:22
**dock** 49:4
**document** 7:6 13:25 19:21 20:9 24:8 44:8
**documents** 5:13,13 6:4,12 56:8 63:12
**doing** 14:1 18:11 27:5,24,25 29:9 36:9 54:4
**Don** 24:24 25:11 62:24 64:5
**Donald** 1:6 16:20,22 63:22 64:11 65:13
**drilling** 31:13
**driven** 29:20 30:2,8
**driver** 29:24 30:2 33:13 48:10,13 49:4 51:22 52:12 53:3,7
**drivers** 6:24 27:25 31:21 33:21 36:12 36:15 37:7,8 38:9 48:22 52:3,14
**driving** 15:21,23 18:22 33:11,12,24 38:9 48:23
**drop** 30:12
**dropped** 35:16,17,24
**dropping** 30:18
**due** 51:6
**dues** 52:16,16
**dug** 30:3
**duly** 3:3
**duties** 3:16
**D.C** 9:4,12

**E**

**E** 2:1,6 68:1,1
**earlier** 15:16 20:4 21:2 23:8 26:22 37:25 48:7
**earth** 31:19
**ease** 37:13
**effect** 7:21 47:23 61:7
**effective** 57:11
**eight** 30:11 60:12 61:3.18
**either** 20:8 21:6,9 35:18 68:9,10,10
**embankment** 29:22 30:14
**employed** 3:7.8 63:23,25
**employee** 8:8 46:20 52:21,23 53:2,8,13 53:14,22,24 54:3
**employees** 46:24 51:21,22 52:1.12 53:10 63:21 64:6.9 64:19 65:10.15
**employee's** 52:11,19
**employer** 8:17 13:13 13:21 39:20 40:16 41:2 47:12,23 55:17 65:20
**employers** 12:16 47:14 66:14
**employer's** 52:9
**employment** 38:19
**ended** 11:21 61:18
**ends** 57:19
**Engineering** 31:9
**engineers** 33:17
**England** 3:8 7:1 8:1 8:4,6,15,19 9:24 10:1,2,4,17,19,22 10:25 20:5
**ensure** 62:9
**entail** 3:12
**enter** 64:23
**entire** 51:14
**entirely** 33:20,22 43:10
**entirety** 42:20
**entity** 63:25 64:6
**Erlich** 10:23
**especially** 68:5
**ESQUIRE** 1:18,20
**essentially** 55:23
**event** 68:10
**exact** 32:1 63:16
**exactly** 18:12,13
**EXAMINATION** 2:4 3:4
**example** 62:1 65:22
**excavate** 30:12
**exclusively** 33:13
**Excuse** 14:8 19:4 23:5 28:24 44:18 49:11 51:8 53:17 58:24 61:9
**executive** 10:21
**executives** 65:14
**Exhibit** 12:17 15:18 17:2,2,21,21 18:1 19:1,21,22 20:24 20:24 22:2,3 24:6 24:8 25:15 37:23 37:23 38:5.13 39:23 41:20 42:13 42:14,16.24.25 46:18 49:16.17.18 49:25 51:1,11 53:6 54:8,10,11,15,16 54:24,24 55:15 56:1,2.21,25 57:4 57:10 58:1,6 59:6 60:14 65:23 66:5
**exhibits** 5:3,6,24 12:2,4 16:3,5,7 19:21 21:20 37:15 56:7,9,11 66:8 68:7
**expanded** 61:5,20 62:6,8
**expansion** 61:23
**experience** 27:1
**Expires** 68:18
**explain** 7:25
**explained** 20:4 26:2
**explanation** 7:24 48:8
**expressly** 68:3
**E-R-L-I-C-H** 10:23

**F**

**F** 1:11 2:3 3:2,6 68:1 68:21
**fact** 18:1
**failure** 47:10 50:18
**fair** 29:10
**fall** 37:23
**falls** 37:25
**familiar** 5:12 32:12 38:16 41:4
**far** 34:23
**father** 62:18
**favorable** 35:9
**February** 1:14 68:14 68:19
**feet** 30:11
**fell** 40:9
**fiduciaries** 59:14,16
**file** 47:6 63:3
**filed** 2:13,14,15,16 2:17 16:8,13 22:4
**finally** 34:25 57:4
**Financial** 1:13
**find** 41:20 48:7
**fine** 4:13 45:12
**finish** 21:14
**first** 13:7 22:7 23:18 25:19 38:6 47:22 49:15 50:2 51:4 52:6 53:4 57:8,9 63:18 68:6
**five** 8:15 10:2 36:4
**focus** 23:17 32:13 50:24
**focused** 37:19
**focusing** 49:22,25 50:16 54:22
**following** 50:23
**follows** 3:3
**foregoing** 68:6
**form** 13:16 14:13 17:15 19:25 21:23 31:16 35:23 37:24 45:19 50:21 51:13 53:20 58:25 66:6 66:15
**formal** 24:3,3
**formed** 8:2,5
**forth** 44:10 48:1 50:16
**foundation** 31:17
**four** 3:13 5:13,15 17:3 56:7,8 60:21 63:8
**fringe** 47:6
**fun** 3:18
**fund** 1:4,4,5,5 2:18 2:19,20,21,22 5:21 5:21,21,22 6:9 11:11,13 24:11,14 41:22 44:23 45:15 49:7 56:17,22 57:2 57:6,9 58:21,23 59:9,12,15,22 60:10,12 62:19 64:4 65:22 68:20
**funds** 1:6 2:13,14,15 2:16,17 3:23 4:23 5:16,20 11:8,10,15 11:17 16:9,13,18 17:3,4,10,25 20:21 22:4,8,9 24:9 44:20 45:8 46:13 46:22 47:3,3,10,13 47:15 49:7,8,15 50:2,5 57:25 59:13 61:13,14 62:13 63:8 64:2,13,15,18 64:20,22,23,25 65:7,7,17
**fund's** 16:15 64:7
**further** 38:3 47:2 68:7,9,12

**G**

**Garden** 63:15
**GC** 37:12
**general** 13:2 14:7,10 34:22 35:1 36:16 36:18,25 37:9
**generally** 4:2 5:14 65:19
**geographic** 8:22 9:17,19
**getting** 62:8
**give** 3:20 4:7 5:5 33:8 41:19 55:14
**given** 3:25
**gives** 9:9 10:12
**Glad** 49:23
**go** 5:11 14:13 25:4 28:4 33:9 36:4 48:19 51:13 53:21 56:10,14 66:7
**goes** 25:1 45:22 47:2 48:23
**going** 4:15 5:2 13:15 14:12 15:14 16:3 27:5 29:17 31:3 35:22 36:7 43:3,21 45:10 48:14 50:20 56:6,14 58:7,24 60:20
**good** 19:18 66:17,19 67:5
**gray** 14:14
**great** 4:21 39:6
**grievances** 3:16
**grocery** 37:2
**ground** 4:6 29:20 30:8 31:14
**guess** 12:20 18:8 26:3,18 35:18 39:24 42:20 53:22
**GURSKY** 1:17,18 13:15,23 14:8,12 17:15 18:4 19:4,13 19:18,25 20:3 21:17,23 23:5,10 23:13 28:14,20,24 29:2 35:20,22 37:24 41:18 42:2,5 43:3,9,21 44:2,12 44:18,22,25 45:12 45:16,19 49:11,23 50:20 51:8,13 53:17,20 55:2,7 58:24 60:8 61:9 66:6,15,19,24 67:3 67:7,12
**guys** 36:9

**H**

**H** 2:6
**hand** 40:8 68:13
**hands** 25:16
**happens** 14:15 37:1
**hard** 62:7

**Hart** 31:9
**haunting** 55:7,9
**head** 24:18 63:17
**health** 1:5 2:21 5:22 11:11,21 17:4 57:1
**heard** 28:22
**heavy** 12:21,24 14:4 14:19,20 18:20 38:7 48:21
**held** 62:9
**help** 37:22 38:2,3
**hereunto** 68:13
**hierarchy** 9:3
**highway** 12:21 38:8 48:21
**hold** 29:22
**holds** 30:13
**hole** 30:3 31:14,15
**holes** 31:16
**Holland** 1:13,20
**Holmes** 10:14 15:9 22:16 23:18,24 25:22 26:2 27:16 35:14,19 41:14 59:16
**hoping** 35:7
**horizontal** 13:5,9,10 13:10 30:10
**host** 36:15
**hour** 67:2
**hours** 46:25

**I**

**Icos** 1:8 7:11,15,16 13:13,21,24 15:17 15:21 18:10,23 19:2,23 20:4,16,20 22:20,21,24 23:21 27:8,18,21 28:7,9 28:11 29:3,8,14,25 30:16,25 31:8,9 32:4,6,10,12 33:15 34:4,15,19 35:8,13 37:10 38:19 39:4,4 43:18 46:10 50:4,6 51:2,11 53:9,14 65:20 66:1,14 68:20
**identical** 5:14
**identification** 41:23
**identified** 19:7,14 25:3 31:22 44:7 56:17 59:16 63:22
**identifies** 17:11 42:17 59:14
**identify** 17:7 21:10 21:19 33:4 38:4 43:16 44:17 45:23 46:7 56:8,25 57:4
**identifying** 33:1
**importantly** 51:19
**inclined** 39:5
**included** 23:2 52:17
**inclusion** 22:14
**incomplete** 57:19 58:10,12,13
**incorporate** 66:3
**incorporated** 6:21 8:9
**industrial-type** 12:25
**industries** 2:11 12:10,13,18 14:3 14:21 17:14 18:3 21:3
**industry's** 15:12,25 18:21 20:14 46:19 54:20
**information** 33:8
**initially** 11:19 18:18
**inside** 31:17
**insofar** 49:16
**instance** 20:16
**instructing** 44:25
**intended** 55:12
**interest** 42:9 54:19
**interested** 68:10
**international** 8:2,3 8:25 9:6,7,10,14 40:23,25 41:9
**interpretation** 28:12
**interrogatories** 2:13 2:14,15,16,17 16:8 16:19 17:5 43:15 43:23 45:9 57:25 59:13
**interrogatory** 16:12 17:5,20 41:16,18 41:21,22 42:6,11 43:5,10 44:3,4,7 44:22 45:2,13,15 46:12,13 58:1 59:23
**involved** 36:17,18 38:12 40:9 41:1
**involvement** 32:2 37:12
**Island** 1:1,4,4,5,5,13 1:13,24 2:11 3:15 8:12,13 9:20,21 10:11,13,18 11:5,6 11:9,11,12 12:10 12:14,19 13:2 14:2 14:3,21 17:14 29:23,25 32:11 39:9,11,18 63:11 63:13,15 68:3
**issue** 33:2 38:18 50:24
**issued** 4:24
**issues** 14:25 36:19
**item** 22:15 23:1,25 24:3 25:9,25 26:4 26:9,13

**J**

**J** 1:12 68:2,17
**January** 57:11
**Jefferson** 63:10 64:8 64:16
**Jerry** 37:5
**job** 3:10,12 14:1,4,4 14:6,23 15:13 18:11,12,17 19:2 19:23 20:18 22:20 27:3 30:17 31:3,5 32:3,6,8,9 34:10 34:13,18 36:4 37:8 39:22
**jobs** 29:12 32:4,6 36:10
**joint** 7:15
**judge** 45:11
**July** 8:2
**jurisdiction** 15:1 34:18
**jurisdictional** 32:11 38:14,20 39:2,5,8 39:13,16,22 40:1,2 40:12,16

**K**

**Keep** 60:20
**kept** 63:12
**kind** 27:4 30:9 62:23 64:23
**knew** 55:8
**Knight** 1:13,20
**know** 12:24 13:13,21 15:10,20 20:16 27:23 28:7 36:2,2 36:4,8,10 46:3 51:21 58:9,10 61:17 63:16 64:21 67:1
**knowledge** 15:2,5 27:10 29:17 30:15 31:2 32:22,25 57:22 64:5,10
**known** 8:6

**L**

**labor** 64:4 65:7
**laborer** 30:3
**laborers** 31:1 33:6 34:19 36:13 38:20 40:7,10
**lagging** 29:19,19,21 30:18 31:22 32:5,8 32:23
**Lander** 59:18
**Lavin** 1:6 16:22 24:24 25:11 62:24 63:22 64:11,13
**Lavin's** 16:20
**Law** 1:13,17
**lawsuit** 3:20,22 7:4 18:3 19:3,24 21:22 22:7 23:21 27:9,14 32:14,16 33:2 43:20 51:3 55:22 58:22 63:9
**lawyers** 24:9
**learn** 25:19
**learned** 35:12
**leave** 45:9
**legal** 62:21 63:1,1
**Legess** 37:5
**let's** 32:13 37:17 40:18 57:8 66:25
**license** 33:17
**lies** 14:23
**lieu** 51:23
**litigation** 14:24 22:5
**little** 7:23,24 50:22
**live** 37:1
**LLP** 1:20
**local** 6:15,17,21,23 6:24,24,25 7:2,3 7:21 8:3,8,21,23 9:13,16,19,23 10:6 10:7,15 12:8 27:11 28:8 29:3,4,7,14 29:14 30:25 33:10 34:4,13,17 38:19 41:8 54:6 63:19,23 65:7,11,16
**locals** 8:8,18 9:9 11:4 27:2 39:15,17
**location** 63:3
**long** 11:14,22
**longer** 21:3
**look** 5:5,8 6:18 7:6 12:4 18:17 24:10 33:14 38:5 39:1,3 49:2 52:4,4 57:8 66:22
**looked** 6:4,14,17 7:7 41:16
**looking** 7:17 13:1 19:9 51:17,17 59:2
**looks** 58:9
**lower** 35:5

**M**

**machine** 33:20
**machinery** 33:16,25 37:21
**maintained** 63:5
**management** 61:21 62:7
**manager** 10:6,8,11 10:13,14,16,19
**mandatory** 46:23 51:20
**MARC** 1:18
**Marc's** 6:3
**mark** 10:23 22:1 24:5 56:6 59:4
**marked** 5:4,7 12:3 16:3,6 19:20 22:2 24:6 56:12 59:6
**Maron** 59:19
**Massachusetts** 6:25 39:6,15
**material** 36:14
**matters** 62:9
**McMullen** 59:18
**mean** 7:11 16:14 18:14 21:6 24:1 25:13 36:1,10 40:18 45:21 46:3 48:11,25 51:18
**meaning** 39:23 40:13 48:5 52:23 53:15
**means** 48:17
**meet** 40:17,25
**meeting** 2:23 14:25 15:11 16:15 22:9 22:10,11,15 23:7 23:23 25:16,18,20 25:22 26:12 27:12 34:11 40:22 59:9
**member** 8:19,22 9:9 9:23 54:6
**members** 9:13,13,16 27:13 28:9 29:4,15 48:25 53:10
**memory** 6:7 29:17 32:4 62:7
**men** 31:16
**mentioned** 8:25
**met** 6:3 37:2

**mind** 13:18
**mine** 66:24
**minute** 42:2 54:23
**minutes** 2:23 24:1 59:8,8
**misassignment** 39:3
**month** 47:8 62:10
**monthly** 47:6
**move** 22:23
**multiple** 31:5 32:3
**mutually** 47:12

**N**

**N** 2:1
**name** 3:5 10:13,23 24:23 31:20 37:4 46:22 63:14 65:2 68:21
**naming** 60:10
**nature** 12:16
**need** 52:1
**needed** 37:6
**needs** 7:24
**negotiations** 3:17
**neither** 68:12
**net** 52:11,19
**never** 36:1
**new** 3:8 7:1 8:1,4,6 8:15,19 9:24 10:1 10:2,4,17,19,22,25 11:25 20:5 52:20
**Nods** 24:18
**normal** 62:12
**normally** 12:22,23 13:3
**Notary** 1:12 68:3,17
**noted** 44:21,24
**notice** 2:9,9,10,10 19:14
**notices** 4:24 5:3,24 19:12,20
**number** 12:1 17:6,8 41:22 45:15,20 47:9 50:7 57:11 58:2 59:5,14

**O**

**object** 13:15 14:12 17:15 35:20,22 37:24 43:3,21 50:21 53:20 58:25 66:6
**objection** 13:23 18:4 19:4,25 20:3 21:23 44:21,24 45:19 51:13 66:15
**obligate** 66:10
**obligated** 50:4
**obligates** 8:20
**obligation** 44:9 46:10,25 52:9 53:14
**obligations** 34:23
**obviously** 45:1
**occur** 34:9
**October** 22:11 23:22 24:11 25:17 59:10 60:3,4
**office** 1:13 6:3 63:12 64:7
**officer** 10:7,24
**offices** 63:4,8
**official** 1:6 18:25 19:6,15
**okay** 3:19,25 4:9,18 5:18 7:9 13:18 16:11 17:2 21:16 23:10 28:6 29:17 30:23 31:18,22 32:15 33:7 37:18 38:13 43:9 46:5 49:19 50:1,14,24 51:7,16,17 57:13 57:16 58:4,16 59:12 60:23
**once** 16:3
**ones** 37:16
**ongoing** 23:4
**on-site** 34:22 36:16 37:3 65:11
**on-the-record** 45:10
**operating** 33:16,17
**operation** 31:13 33:25 37:21
**opinion** 35:2
**opposed** 33:6 38:4 42:13
**organizations** 64:4 65:8
**originally** 7:14
**ought** 29:15
**outcome** 27:23 28:7
**outside** 55:17 65:3
**overseeing** 3:16
**overtime** 18:15
**o'clock** 67:4

**P**

**Pacheco** 24:23 25:12
**page** 2:2,7 38:13,21 47:21 48:19 52:8 53:4 57:17,17,19 57:23 58:7,18 60:16,20
**pages** 57:10,14,23 68:6
**paid** 26:25 37:10 51:23 52:1
**Palmisciano** 1:11 2:3 3:2,6 5:8 12:4 17:19 19:5 23:16 43:11 45:4 56:14 59:17,17 68:21
**paragraph** 17:8 40:20,20 44:5,12 46:2 51:14 55:13 55:16
**paragraphs** 17:8 46:8
**Pardon** 59:25
**Park** 63:10 64:8,16
**part** 6:25 7:2 18:23 20:5 21:7 28:8 41:4 50:25
**participate** 46:24 51:23
**particular** 14:6,16 22:20 26:18 29:15 33:5 36:25 39:22 48:15 63:3 64:6
**parties** 19:11 35:25
**partner** 7:15
**parts** 29:4,5,7
**party** 45:3 68:9,10 68:10,12
**passage** 62:2
**passed** 62:23
**pay** 42:8,8 46:25 52:19
**payments** 18:13 22:24
**payroll** 42:7 48:2
**penalties** 42:9
**pension** 1:4 2:18,19 5:21 11:10,19,22 17:4 24:11,14 41:21 45:14 49:7 49:15 56:17 57:9 57:25 58:21 59:9 59:12,13,15,22 60:10,12 65:22,25
**people** 39:21 64:7,14 64:17
**percent** 20:15 27:22 62:4
**perform** 27:13
**performed** 15:14 22:22,25 26:24 29:23 33:6,21,22 34:1 38:7 48:21 52:13,15
**performing** 22:21 33:15
**person** 5:22 19:10 43:22,24 68:4
**PHENIX** 1:23
**Phil** 62:23 63:2 64:1
**phrased** 4:17
**physical** 64:16
**picture** 30:6
**pieces** 31:8
**pile** 6:24 15:21,23 18:22 20:22,23 21:4,5 27:24 29:20 29:22,23 30:1,2,8 30:11 31:7,12,13 31:20,20 33:3,11 33:12,12,13,21,24 36:12,15 37:7,8 38:3,8 48:9,13,22 49:4 51:22 52:3,14 53:3,7
**piles** 30:21,22,22,24 31:20 37:20 38:10
**piling** 38:11
**place** 7:18 22:11 26:12 27:7
**placed** 23:25 24:2
**plaintiff** 1:16 2:13 2:14,15,16,17 4:23 5:20 11:8 16:9 22:4,8 49:7
**plaintiffs** 4:23 18:25 19:6,15 20:19 42:25 63:9
**plan** 46:23 47:24 51:20
**plant** 14:15,16
**plants** 14:17
**playing** 35:25
**Plaza** 1:13
**please** 3:5 21:14 42:3 45:17 53:18 61:10 67:12
**plural** 46:1
**point** 21:10 23:8 29:18 31:25 34:17 36:3,3 46:3 66:18
**portion** 2:23 31:7 59:8 64:21
**position** 33:23
**positive** 32:9
**Possibly** 58:15
**practice** 62:12
**practices** 32:11 39:6 39:13,16
**preconstruction** 14:25 27:12 34:11
**prejob** 13:24
**premarked** 5:3
**Prentiss** 1:20 2:4 3:4 4:5,10,14,19,21 5:2 11:25 13:17,20 14:10 16:2 17:17 19:8,16 21:13,18 22:1 23:9,15 24:5 28:16 37:14,17 41:19 42:4,10 43:8 44:1,11,14,21,24 45:7 49:13 55:5,11 56:6 58:18 59:4 60:9,14,20,22 66:17,21 67:1,5,9 68:8
**preparation** 62:14
**prepare** 6:1,13 24:19 50:4
**prepared** 16:24 24:21,22 25:11 62:20
**present** 1:15 6:6 15:3,6
**presentation** 25:25
**pretty** 6:10
**prevail** 20:12,15
**previous** 7:20
**previously** 53:16
**primarily** 15:21 62:6
**primary** 4:6
**prints** 25:12
**prior** 25:22
**probably** 6:16 7:23 11:21 14:18 20:14 25:9,18,21 26:2,9 34:10 35:6 39:15 62:20
**problem** 22:20 26:18 30:16 32:5 37:13 50:23
**problems** 31:5 32:10 36:6,11,16 37:3
**procedure** 4:2 38:14 68:4
**procedures** 39:8
**proceedings** 68:6
**process** 29:19
**project** 21:7
**promptly** 42:8
**properly** 25:4
**proposition** 23:19
**provide** 32:25 40:15 45:8 47:16
**provided** 24:8
**Providence** 1:13 32:7,17

**provides** 65:6
**provision** 38:16 58:21 61:15
**provisions** 17:7 18:15 41:23 43:17 44:5,17 46:8 65:25 66:4,11
**Public** 1:12 68:3,17
**pulling** 38:9 48:23
**Purcell** 59:19
**purchased** 47:7 52:6
**purpose** 43:12 54:12
**purposes** 53:6
**pursuant** 4:24 68:4
**pursue** 35:19 41:14
**pursuing** 21:11 22:24
**put** 8:3 11:25 25:9 26:5,7,8,9,19 28:9 29:21 30:3 54:13
**putting** 6:17 31:14
**P-A-L-M-I-S-C-I-...** 3:6

**Q**

**qualified** 68:4
**qualify** 38:24
**question** 4:7,11,14 4:16,16 13:16 14:13 15:11 16:16 17:6,16,18,19 18:6 18:24 19:3,17 21:15 23:14 28:1 32:22 35:23 40:8 43:4 44:4,16 45:1 45:18,20,21,22 49:12,18 50:10,19 51:3 53:19,21 55:2 55:4,6,8,10 58:25 61:12 63:7 66:7
**questions** 5:23 6:2,8 16:25 19:10,12,13 43:13,24 45:5 54:13,15
**quorum** 62:1,5,8,11
**quote** 40:21 41:3 47:22 48:3 60:25

**R**

**R** 68:1
**Rampone** 59:18
**rarely** 14:14
**reached** 25:24 35:1 40:22
**read** 28:23 45:18 50:11 53:19 55:4 60:10
**reading** 45:20
**realistically** 67:2
**really** 19:9 30:18
**reason** 50:10
**reasoning** 26:3
**recall** 31:25
**recess** 56:13
**recognize** 16:7 22:3 59:7
**recognizes** 47:12
**recognizing** 14:17
**recollection** 22:19 23:17,24 24:2,4 25:14 26:6,11,15 31:6 36:20 61:19 61:22
**record** 4:15 16:1,10 29:1 33:1 61:9,11 67:10
**recording** 62:15 68:6
**refer** 46:12 51:6 53:2 56:3
**reference** 43:6 45:21 48:16
**references** 15:22 21:5 66:9
**referred** 45:24 46:2 56:9,17,23 57:2,6
**referring** 14:1 42:13
**refers** 17:20 42:11 58:2
**refreshing** 6:7
**regard** 27:7
**region** 9:17,19
**regional** 3:8 7:1 8:1 8:5,5,7,19 9:8,24 10:1,17,20,22,25 20:6
**reinforcement** 30:10
**relate** 42:6
**related** 63:7
**relating** 43:24 45:5
**relation** 25:16,20
**relationship** 3:23 7:3 11:8
**relative** 37:20 68:9
**relies** 58:22
**rely** 17:10 18:20 21:21 41:24 42:25 43:18 46:3,9 49:8 49:15 50:2
**relying** 18:1
**remaining** 57:22
**remember** 6:12 25:23 27:20 36:11 62:3,17,17 63:14
**remittance** 51:6
**remittence** 47:6
**rep** 3:11
**repetitive** 6:9
**rephrase** 19:16
**report** 11:2,5,7 47:6 47:7 50:17
**Reporter** 67:11 68:3
**REPORTERS** 1:23
**reporting** 43:1
**reports** 42:7 44:10 46:11 50:4 51:2
**represent** 61:13
**representation** 19:5
**representative** 40:24 41:9
**representatives** 40:25 41:1
**reps** 3:14 11:6
**request** 27:19 28:8 40:22 41:8
**requested** 22:14 68:12
**requesting** 25:8 26:3 45:14
**requests** 24:10
**required** 43:18,19 47:4 51:1
**requirement** 30:9 43:2 50:16
**requirements** 47:12 62:2,5
**requires** 33:16 47:5
**resolution** 26:1 62:2
**resolve** 40:17
**respect** 17:2 41:25 61:12
**respectfully** 44:3
**respond** 5:22 43:24
**responded** 27:18
**response** 24:9 42:5 44:19
**responsible** 35:5 62:13
**restating** 13:19
**restriction** 68:5
**retained** 68:8
**retention** 31:19
**review** 62:21 68:12
**reviewed** 6:4,13,20
**Rhode** 1:1,4,4,5,5,12 1:13,24 2:11 3:14 8:12,12 9:20,21 10:11,13,18 11:4,6 11:9,11,12 12:10 12:14,19 13:2 14:2 14:3,21 17:14 29:22,25 32:11 39:8,11,17 63:11 63:13,15 68:3
**RI** 68:20
**right** 5:19 6:12 7:22 15:18 16:7,21 28:10 30:4 38:2 39:21 40:11 42:22 44:14 49:21 56:21 58:6,8,14 65:17
**rights** 34:20
**road** 12:23 63:10 64:16
**roads** 12:24 13:10
**rolled** 7:10,21
**rule** 4:6 21:13 68:5
**Rules** 68:4,5
**running** 32:4,6

**S**

**S** 2:6
**Sanchez** 27:21 35:15
**Sanchez's** 6:5,6
**Savoie** 59:17
**saying** 18:5 19:1 20:2 43:18 46:10 51:25
**says** 33:10 35:4 40:21 41:25 47:10 47:11,22 55:14,16
**scenarios** 20:17
**scheduled** 1:14
**secant** 31:7,12,13,20 33:3 37:20 38:3,12
**second** 40:20 41:19 46:21 60:21
**secretary/treasurer** 10:21
**section** 42:19 46:19 47:2,5,14,19,20 48:19 49:2,8,16 50:3,13,15,15 51:5 51:6,14 52:5,8,24 54:19 55:16,19 56:2,18 58:14
**sections** 15:24 42:1,6 42:11,21 50:7,11 51:9 54:22,23 55:6 55:9 56:1,3,9
**see** 17:6 40:18 48:3 59:19
**seek** 41:2
**seeking** 26:1
**seen** 5:9 61:16
**selected** 43:6
**senior** 3:11 10:10,12 65:13
**sentence** 46:21 47:22 48:3,6 49:8,15 50:2 51:5 57:20 58:10,12
**sentences** 38:6 46:8 51:18
**separate** 5:13
**sequentially** 28:5
**series** 54:14
**services** 65:6
**Servicing** 11:6
**set** 60:21 67:3 68:13
**settled** 40:19
**settlement** 41:2
**sewer** 14:15,16
**Shawn** 59:18
**sheet** 38:10
**Shorthand** 68:2
**show** 16:2,4 41:20 60:2
**Showing** 59:7
**sic** 20:25
**signatory** 20:6,7
**signed** 7:8,14 8:12
**signing** 8:12
**signs** 8:17
**similar** 65:16
**simply** 7:7
**single** 21:10
**singular** 46:1
**site** 22:20 34:10 37:1
**sites** 31:3,5 32:3
**six** 8:4 10:3,4 61:1 61:15
**slang** 12:20
**slash** 33:13
**sole** 52:9
**somebody** 25:25 54:3
**somewhat** 39:7,17
**sorry** 10:9 21:16 28:20 49:14
**sort** 28:4 37:19
**sorts** 3:17,18
**speak** 19:11
**specific** 17:7 29:12 29:12 32:22 33:1 41:23 43:16 44:17 45:21 46:7,15 47:3 48:10
**specifically** 31:25 44:5 51:4,25 58:2
**spend** 35:6
**spokesman** 18:25 19:6,15
**spread** 45:10
**stamp** 46:23 47:23

51:20 52:18
**stamps** 52:5,11
**start** 12:17 18:14 21:17 22:4 30:12 37:17 45:22 46:15 46:17,17 56:15
**starts** 45:21 46:19 46:21,21
**state** 1:12 3:5 9:21 39:6,14 68:3
**stated** 26:22
**statement** 59:21
**states** 1:1 8:4,15 10:2,4
**status** 10:12
**staying** 59:12
**steel** 29:20,22 30:8 38:10
**stenographer** 68:10
**sticker** 11:25
**stop** 30:4
**stopped** 36:5,8
**store** 37:2
**straightened** 49:23
**strike** 10:4
**structure** 9:4 31:16
**stuff** 31:10 36:7
**subcontracting** 40:4
**subject** 27:13
**submission** 42:7
**submit** 44:9
**substance** 16:25 55:21
**sub's** 35:6
**successor** 7:19
**sudden** 62:24
**sue** 50:17
**sued** 50:5
**suit** 68:11
**superintendent** 36:25 37:4
**supplemental** 17:3 42:16
**support** 30:10
**sure** 7:18 13:20 20:15 27:22 30:5 62:4 67:5
**surrounding** 26:18
**sworn** 3:3 68:6
**synonymous** 48:9,13 49:6 53:4
**system** 31:19

T

**T** 2:6 68:1,1
**table** 62:10
**tag** 35:25
**take** 5:5 27:7 68:4
**taken** 1:11 56:13
**talk** 16:4,18 50:12 66:21
**talked** 52:21 60:17
**talking** 20:16 23:7,7 33:18 52:14,15
**talks** 47:15 52:7
**tank** 20:13
**tasks** 33:5 36:10
**Ted** 41:18
**telephone** 35:25
**tell** 4:11 5:8 12:5 27:18 28:21 53:24 54:11
**telling** 27:20 31:4
**tells** 52:5
**temporarily** 37:13
**tender** 49:5 53:5
**tendered** 48:1
**tenders** 48:23
**term** 12:20 38:21 48:8,12,17 49:3 52:9,20 53:16
**terms** 47:17 53:6 55:21 65:21,25 66:3,12
**territorial** 55:18
**testified** 34:3
**testifies** 3:3
**testimony** 17:23 31:24 32:21
**Thank** 29:2 55:25 57:8
**Thanks** 4:21 58:18
**thereto** 68:5
**thing** 51:18
**things** 3:18,18
**think** 5:14 6:9 30:15 35:24 37:5 39:1,2 46:3 47:18 48:19 49:11 53:2 67:2
**third-party** 65:3,5
**Thomas** 59:17,19
**thought** 26:7 28:16 39:10
**three** 3:13 55:6,9 64:14,15 65:10
**tied** 14:18
**tier** 35:5
**time** 23:1,18 24:15 34:25 35:6 36:3 62:7 64:22
**timely** 42:7
**times** 18:14 34:10
**today** 8:6 26:11
**told** 27:15,16 37:2,6
**top** 52:7 63:17
**topic** 22:7 25:19
**topics** 5:23 6:2 16:17
**touched** 6:20
**town** 37:1
**towns** 9:20 39:19
**trade** 29:8 39:11 52:6
**trades** 9:5 22:21 27:5
**transcript** 68:12
**trap** 49:20
**Trevi** 1:8 7:11,13,16 13:13,21,24 15:14 15:17,21 18:10,22 19:2,23 20:4,16,20 22:20,21,24 23:21 27:8,18,21 28:7,9 28:11 29:3,8,14,25 30:16,25 31:8,9 32:3,6,10,12 33:14 34:4,15,19 35:8,13 36:9 37:10 38:19 39:4,4 40:3,5,6 43:18 46:10 50:3,6 51:2,11 53:9,13 65:20 66:1,14 68:20
**trick** 43:14
**trouble** 28:21
**trucks** 36:11
**true** 24:17 65:11 68:6
**trust** 2:19,20,21,22 6:19 17:9 41:24 43:5,7 44:7 45:24 47:18 56:4,16,22 57:1,5,9 58:3 60:15 61:1 62:14 63:4,5 65:22,25 66:4,9,11,13
**trustee** 11:12,14,18 61:21,21
**trustees** 22:17,23 23:19,20 25:8,24 26:17 47:17 59:9 59:21 60:10,12 61:1,3,15,24
**trusts** 6:21
**try** 40:17 66:25 67:7
**trying** 43:13 49:19 53:12 62:16,17
**turn** 11:4 28:25 37:14 38:13 47:19 54:8,9 58:18 60:16
**two** 6:10 17:20,24,24 30:11,20,21,21,22
30:24,24 37:15 51:9,18 54:22 55:22
**types** 20:17 31:22 32:1 38:9

U

**Uh-huh** 9:1 42:10 52:22
**ultimately** 23:22 25:10
**unable** 21:9,19 35:12
**unanimous** 40:21
**understand** 4:8,10 4:19 5:19 17:23 31:24 43:12,15 44:16 45:13 50:18
**understanding** 8:16 28:11 30:1,6 42:23 53:12
**understood** 4:15 13:25 15:17 26:20 28:2 38:7 48:20
**union** 2:11,12 8:25 9:3,14 12:8,9,11 22:17 27:2 35:12 35:13 39:20 40:16 40:22,23 41:1,9 48:12 49:1 52:6 53:11 61:21
**unions** 8:4 9:5,6,6 14:25 41:1
**union's** 39:21
**UNITED** 1:1
**Unlimited** 64:2,3,24 65:1,3,10,14,15
**unloaded** 36:14,15 37:7
**unloading** 36:11
**unwilling** 21:9,19
**use** 20:10 29:4 37:8 39:5
**usually** 14:7 24:22 27:3

V

**vacation** 1:5 2:22 5:21 11:12,21 17:4 52:16 57:6
**Vague** 26:14
**Valerie** 24:24 25:11 62:18.24 63:11,22 64:5,11,12,17 65:13
**Valerie's** 64:1,19
**various** 4:23 34:10
**venture** 7:15
**verbalized** 23:24 26:8
**verbiage** 18:21 55:13
**vertical** 13:6,11
**view** 51:19
**violation** 40:4 47:9 47:11 50:12
**voting** 62:2
**vs** 1:7 68:20

W

**wages** 18:12 51:23 52:11
**wait** 21:14
**want** 18:9 19:8 23:12 41:20 43:11 46:7,13,15 50:24 66:21,22 67:7
**wanted** 21:14
**Warwick** 14:2 32:19 63:10,18
**Washington** 9:4,12
**wasn't** 28:1 31:6 44:18 45:3,5 62:10
**watch** 62:19,25
**way** 6:16 26:19 28:25 35:7 39:12 40:18 41:15 50:10 53:23 61:25
**web** 30:13,19
**week** 36:5
**welder** 49:4
**went** 6:7 36:5,7
**weren't** 16:15 27:24 27:25 31:11 36:12 62:9
**we'll** 12:1,17 16:4,4 43:8 45:9 46:17 56:10
**we're** 19:9 33:15 48:11 51:25 52:14 52:15
**we've** 14:16 37:19 41:16
**Whatever's** 67:5
**WHEREOF** 68:13
**William** 15:9 59:16
**witness** 1:11 2:2 4:9 4:13,18.20,22 5:17 13:18 19:19 21:16 23:12 28:15.18 37:16.18 49:14 50:22 58:20 59:2 60:19.21.23 68:5 68:13.21

**woman** 24:22 25:3
**women** 64:15
**wood** 38:10
**wooden** 30:18
**word** 51:21 53:13 58:17
**wording** 18:8
**words** 57:19
**work** 3:14 8:22 14:19,20,20 15:7 15:23 18:5,20 20:17,19,20,22,23 21:4 22:21,25 23:2 26:23 27:5,8,13,24 27:25 28:10,12,14 28:15,17,18,19 29:4,5,7,9,12,15 30:17,25 31:1,7,8 31:11,17,23 32:1 32:13,16,19,22 33:1,10,11,11,12 33:13,14,16,18,19 33:19,20,22,23,25 34:8,15 35:2 37:12 37:20,20,22 38:3,7 38:12 39:3,10,11 39:12 40:8 48:20 51:3 52:12,15 54:4 64:7,15,17,18 65:15,16
**worked** 21:12 28:3 34:5,8,9,11 47:1
**working** 20:11,13 21:8 27:1 36:9 55:17
**works** 4:3 24:23
**wrap** 66:25
**written** 55:20
**www.alliedcourtr...** 1:25

**X**

**X** 2:1,6

**Y**

**yeah** 4:20 21:18 23:15 29:10 39:24 47:21 49:13 67:9
**year** 11:20
**years** 8:11

**0**

**02888** 63:11
**02920** 1:24
**04-163S** 1:7

**1**

**1** 2:9 5:3,6,24 19:21 46:19 47:19,20 48:19 49:8,16 50:3 51:5,15 52:5,8,24 54:23,25 55:16 57:11,11,14
**10** 2:16 16:7 17:12 41:20 42:17,19,19 42:20,24 54:9,10 56:2,18 58:1 67:3
**10/21/03** 2:18,23
**10:00** 1:14
**10:06** 3:1
**100** 20:15 27:22 62:4
**101** 9:11
**11** 2:17 16:5,8 17:2,2 42:16 45:24
**11:58** 67:13
**115** 1:23
**12** 2:11,12,18 17:13 22:2,3 42:1,12,24 44:13 47:19,20,21 49:9,16 50:3,12 51:5 52:24 54:11 56:1,18
**13** 2:18 24:5,6,7 25:15 46:2 52:8
**13's** 24:8
**14** 2:19 56:11,15 57:8,10 58:6 60:14 63:10 64:8 65:23 66:5
**15** 2:20 56:21
**16** 2:13,14,15,16,17 2:21 56:25 57:4
**17** 2:22 56:11 58:18
**18** 2:23 57:15,17,19 58:7 59:6,7
**19** 39:15,16
**1976** 57:12
**1993** 11:16,17
**1996** 8:2 11:24

**2**

**2** 1:14 2:9 47:2 48:19 48:20 54:23,25 56:2,3,9,18 68:19
**20th** 47:8
**2000** 61:19,20
**2003** 22:12 23:22 24:12 25:17 59:10
**2005** 60:4
**2006** 1:14 68:14,19
**21** 22:11 24:11 25:17 59:10
**22** 2:18
**24** 2:18
**26** 8:3,8

**3**

**3** 2:4,10 38:13,22 42:1,11 47:5 49:2 51:6 54:23,25 59:14
**30** 68:5
**39** 9:20 39:18

**4**

**4** 2:10 5:4,6,24 19:21 38:21 39:23 40:13 40:15,20 42:1,11 47:9 50:13 60:16 60:20
**401** 1:24

**5**

**5** 2:9,9,10,10,11 12:1 12:2,4,13,17 13:7 13:8 15:18 17:21 18:1 19:1,21 20:24 21:20 37:15,17,23 38:5,13 39:23 42:1 42:11,13,25 46:18 49:16,17,25 50:15 51:1,11 53:6 54:11 54:16,19,24 55:15 56:1,9 66:8
**5th** 68:13
**5's** 55:15
**56** 2:19,20,21,22 6:23,24 7:3,8,21 8:8
**56's** 6:17
**59** 2:23

**6**

**6** 2:12 12:2,5,11 13:1 13:11 17:21 19:22 20:24 21:20 37:15 37:23 42:14,24 44:7 45:23,23 47:14 49:18 50:15 54:8,10,15,24 55:19 56:2,9 66:9
**6.12** 58:2,5,14
**68** 68:6

**7**

**7** 2:13 16:5,7

**8**

**8** 2:14 16:7 17:6 41:22 45:15,20 58:2
**8/17/06** 68:18

**9**

**9** 2:15 16:7
**94** 7:2 9:13,19,23 10:6,15 12:8 27:11 29:3,4,8,14,14 30:25 34:4,13,17 38:19 41:8 54:6 63:19,23 65:7,11 65:16
**94's** 6:15,21 28:8 33:10
**946-5500** 1:24
**99** 52:7 61:20